Frank BREWER, et al., Plaintiffs,

v.

CITY OF BRISTOL, Tennessee, et al., Defendants.

No. CIV–2–83–217.

United States District Court, E.D. Tennessee.

Dec. 12, 1983.

Susan Emery McGannon and Ogden Stokes of Donelson, Stokes & Bartholomew, P.A., Nashville, Tenn., for defendants; Craig H. Caldwell and Frank Winston of Caldwell, Johnson, Winston & Massengill, P.C., Bristol, Tenn., of counsel for defendant City of Bristol, Tennessee (and the individual defendants, Thomas Moore, Charles B. Peters, Jr., Ewell L. Easley, Jack Hurlbert and Walter B. Miller); and G. Walter Bressler and J.D. Bowie, Bristol, Va., of counsel for defendant City of Bristol, Virginia (and the individual defendants W. David Fletcher, Thomas E. Adams, C. David King, Ron Morgan and Hugh Cooper).

## ORDER

HULL, District Judge.

The report and recommendation of the United States Magistrate is hereby adopted and approved.

Accordingly, it is ORDERED that the defendant's motion to dismiss or stay this action be DENIED.

## REPORT AND RECOMMENDATION

Oct. 25, 1983.

ROBERT P. MURRIAN, United States Magistrate.

This matter was referred to the undersigned United States Magistrate pursuant to 28 U.S.C. § 636(b) and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the defendants' motion to dismiss pursuant to Rule 12(b), Federal Rules of Civil Procedure, or, in the alternative, to stay this proceeding. The plaintiffs assert two counts in their complaint. The first count alleges that the defendants have violated the provisions of Federal Water Pollution Control Act (FWPCA), 33 U.S.C. §§ 1251–1376. The defendants contend that because of a pending State of Tennessee proceeding with regard to the alleged violations this court should dismiss, or at least stay, this proceeding under the doctrine of abstention. The second count

alleges violations of the First, Fifth and Fourteenth Amendments to the United States Constitution and is brought pursuant to the provisions of 42 U.S.C. § 1983. The defendants allege that this count should be dismissed because the plaintiffs have failed to state a claim upon which relief can be granted.

The plaintiffs in this action are riparian land owners owning real property adjoining and underlying Boone Lake and the South Fork of the Holston River in upper East Tennessee. The defendant City of Bristol maintains a sewage collection system and the Bristol Sewage Treatment Plant # 2 in Sullivan County, Tennessee, from which it discharges wastewater into Beaver Creek and the South Fork of the Holston River. The City of Bristol makes these discharges pursuant to a National Pollutant Discharge Elimination System (NPDES) permit which became effective on July 1, 1977. The plaintiffs contend that on thirty dates between May 15, 1983, and July 25, 1983, the City of Bristol violated the terms of its permit and the FWCPA by discharging untreated and inadequately treated municipal sewage containing fecal coliforms, sewage sludge, suspended solids, settleable solids, floating solids, biochemical oxygen demand and other pollutants into Beaver Creek and the South Fork of the Holston River. The plaintiffs contend that the defendants' alleged violations have created a massive sludge bank in Boone Lake, gross bacterial contamination of Beaver Creek and portions of Boone Lake, and repugnant odors near Beaver Creek and portions of Boone Lake. The plaintiffs allege that they use Boone Lake for navigational and recreational and aesthetic enjoyment in activities such as boating, sport fishing, water skiing and swimming. This discharge of the pollution they allege has irreparably damaged their access to and use of these waters for such purposes.

The plaintiffs further allege that by letter dated May 27, 1983, notice of the alleged violations was given to the defendants, to the Administrator of the U.S. Environmental Protection Agency, to the Regional Administrator of the U.S. Environmental Protection Agency for Region IV, and to the chief administrative officer of the water pollution control agency for the State of Tennessee. Since this action was not filed until August 1, 1983, the plaintiffs have apparently satisfied the 60-day notice requirement set out in 33 U.S.C. § 1365(b).

The plaintiffs make the following demand for relief:

(1) that the Court direct the defendants to institute and install effective control techniques and devices, and adopt other necessary procedures to prevent the continued discharge of pollution in violation of the FWPCA.

(2) that the Court direct the defendants to apply forthwith to the Tennessee Department of Health and Environment for a permit for this discharge.

(3) that the Court direct the defendants to perform necessary work in the restoration of Beaver Creek and Boone Lake caused by their discharge of pollutants in violation of the FWPCA.

(4) that the Court order a moratorium on all new taps onto the defendants' sewage collection and treatment system until the defendants comply with the FWPCA.

(5) that the Court direct the defendants to properly install and operate effluent sampling equipment and flow measuring devices.

(6) that the Court direct the defendants to notify the Tennessee Department of Health and Environment, U.S. Environmental Protection Agency, and this Court within five days of any noncompliance with any effluent limitation, and within twenty-four hours of any bypass.

(7) that the Court direct the defendants to perform regular maintenance on their sewage collection system and bypass points.

(8) that the Court assess against the defendants civil penalties in the amount of $10,000 per day for each day of violation of the FWPCA by the de-

fendants, pursuant to 33 U.S.C. § 1319(d).

(9) that the Court award the plaintiffs their costs of litigation in this action including reasonable attorney and expert witness fees.

On August 16, 1983, the Commissioner of the Tennessee Department of Health and Environment issued a Complaint and Memorandum of Assessment for Civil Penalty against the City of Bristol. In his complaint, the Commissioner alleged that the failure of the City of Bristol to provide representative sampling of wastewater, bypassing required treatment, and exceeding the permit limitations at least with respect to solids and fecal coliform violated the terms and conditions of the City of Bristol's NPDES permit. The Commissioner further alleged violations of T.C.A. §§ 69–3–108(b)(1)(3) and (6); 69–3–114(a) and (b).

The Commissioner's complaint, which has been appealed by the City of Bristol, orders, *inter alia,* the city to

(1) make no further connections or line extensions to its wastewater collection and treatment system, except for those structures presently under construction;

(2) repair and make operational to design specifications the effluent diffuser;

(3) relocate flow monitoring and flow-proportional composite sampling for the influent and total effluent so that representative samples may be made;

(4) provide a synopsis of the average daily flow from 1978 to present;

(5) remove and dispose of the sludge bed adjacent to the treatment plant outfall;

(6) provide an engineering report evaluating the feasibility and desirability of placing the former Bristol #1 facility on line to treat influent and surge flows which currently overload and/or completely bypass the treatment works;

(7) provide a program of monitoring of combined sewer overflows and manhole bypasses into Beaver and Cedar Creeks;

(8) provide a comprehensive update of the POTW industrial user pretreatment program including a list of contributing industries and a generic list of all potential source parameters which may enter Beaver Creek and/or Boone Lake during combined sewer overflows and blown manhole bypass events;

(9) provide complete rehabilitation of the treatment plant delivery system, inclusive of the Bristol, Virginia contributions;

(10) expand and improve the sewage treatment plant or build a new one to adequately treat wastewater collected by the system;

(11) pay the department nominal damages in the amount of $1000.

The Commissioner's Memorandum of Assessment for Civil Penalty requests that a civil penalty of $180,000 be assessed against the City of Bristol.

Pursuant to T.C.A. § 69–3–110, the City has the right to appeal the order within thirty days by filing an appropriate petition with the Commissioner. A hearing before the Tennessee Water Quality Control Board is provided for. An appeal from the Board's decision may be taken to the Davidson County Chancery Court, and then ultimately to the Tennessee Supreme Court. T.C.A. § 69–3–111. Apparently, the City of Bristol is at this time seeking a hearing by the Board for review of the Commissioner's order.

## I.

### Abstention

The defendants, without answering the plaintiffs' complaint, move the court to abstain from assuming jurisdiction over this action, or alternatively stay this action pending the outcome of the state court action. This motion raises important issues of federalism regarding the respective

roles of the state and federal courts in the enforcement of the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. §§ 1251, *et seq.*

At the outset it is necessary that one briefly examine the complex statutory structure that Congress has built through the FWPCA. The FWPCA was first enacted in 1948. Act of June 30, 1948, 62 Stat. 1155. The Act initially placed emphasis on state enforcement of water quality standards. However, local enforcement proved ineffective and Congress substantially altered the Act through 1972 amendments to it. 33 U.S.C. §§ 1251, *et seq. See also Middlesex Cty. Sewerage Auth. v. Nat. Sea Clammers,* 453 U.S. 1, 12, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435 (1981). The amendments created various federal minimum effluent standards. 33 U.S.C. §§ 1311–1317. The Act makes it "unlawful for any person to discharge a pollutant without obtaining a permit and complying with its terms." *EPA v. California ex rel. State Water Resources Control Board,* 426 U.S. 200, 205, 96 S.Ct. 2022, 2025, 48 L.Ed.2d 578 (1976). Initially, the EPA is authorized to administer the NPDES permit program. However, if a state establishes a program meeting the requirements set forth in 33 U.S.C. § 1342(b) and those contained in EPA regulations authorized by 33 U.S.C. § 1314(i), the administrator must turn the administration of the NPDES program over to that state. *U.S. v. Cargill,* 508 F.Supp. 734, 739 (D.C.Del.1981). The Tennessee Department of Health and Environment operates such an EPA approved permit program.

The FWPCA contains unusually elaborate enforcement provisions, conferring authority to sue for violations of minimum effluent standards on federal government officials, state government officials and private citizens. *See* 33 U.S.C. §§ 1319; 1342(b)(7); 1369(b). The citizen suit provision, 33 U.S.C. § 1365, authorizes private persons to sue for injunctions to enforce the standards. Section 1365 bars the private citizen from commencing suit in a federal district court to enforce the FWPCA if the Administrator or the state *"has commenced* and is *diligently prosecuting* a civil or criminal action in a court ... to require compliance."* (emphasis added) 33 U.S.C. § 1365(b)(1).

To summarize the relevant sections of the FWPCA briefly, the primary responsibility for setting national minimum effluent discharge standards rests with the EPA and is carried out through the NPDES permit program. The NPDES permit program is carried out primarily by the states, but the EPA has significant authority to step in itself in appropriate situations. *See U.S. v. Cargill,* 508 F.Supp. at 740. Finally, should both the EPA and the state fail to prosecute the claim diligently, 33 U.S.C. § 1365 allows the private citizen to bring an action to enforce the Act.

While it is Congress' express policy that the states retain the primary responsibility to prevent, reduce and eliminate pollution, 33 U.S.C. § 1251(b), it is also Congress' express policy that public participation in the enforcement of pollution standards be provided for and encouraged, 33 U.S.C. § 1251(e).

With this unique statutory backdrop in mind we now turn to the defendants' argument that this court should abstain from exercising jurisdiction over this case.

The United States Supreme Court has recognized that

> [T]he doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.

*Colorado River Water Conser. Dist. v. U.S.,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), citing *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959).

In the *Colorado River* case the Court recognized the existence of three general categories of abstention based on considerations of comity and the proper regard for federal-state relations. *Colorado River*, 424 U.S. at 815–818, 96 S.Ct. at 1245–46. First, abstention is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *Id.* at 815, 96 S.Ct. at 1245, citing *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (*Pullman* abstention). Second, abstention may also be appropriate where there have "been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Id.*, 424 U.S. at 815, 96 S.Ct. at 1245. This is so-called *Burford* abstention. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Third, abstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (*Younger* abstention). In addition, the Court in *Colorado River* recognized that the facts in that case exemplified a fourth category of cases in which a federal court should refrain from exercising its jurisdiction. That category includes cases involving the contemporaneous exercise of jurisdiction by federal and state courts. The refusal to accept jurisdiction was based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246. The Court chose not to characterize this type of case as an application of the abstention doctrine; however, for the sake of simplicity the undersigned will hereinafter refer to this fourth category as "*Colorado River* abstention."

The defendants admit that neither the *Pullman* abstention doctrine nor the *Younger* abstention doctrine has any application to the facts in the instant case. However, the defendants argue that either *Burford* abstention or *Colorado River* abstention would preclude this Court from taking jurisdiction over this case.

■ The undersigned believes that the application of *Burford* abstention would be inappropriate. *Accord U.S. v. Cargill*, 508 F.Supp. 734, 746–747 (D.C.Del.1981). *Burford v. Sun Oil Co., supra,* was a suit brought to enjoin the execution of an order by a Texas State Commission allowing the drilling of four oil wells. The order challenged was part of a complex state regulatory system devised for the conservation of oil and gas in the state of Texas, an aspect of "as thorny a problem as has challenged the ingenuity and wisdom of legislatures." *Burford*, 319 U.S. at 319, 63 S.Ct. at 1100, citing *Railroad Commission v. Rowan & Nichols Oil Co.*, 310 U.S. 573, 579, 60 S.Ct. 1021, 1023, 84 L.Ed. 1368 (1940). The federal government had chosen to leave this problem to the states. *See U.S. v. Cargill, supra,* 508 F.Supp. 734, 746. The Court noted that conflicts in the interpretation of state law, dangerous to success of state policies, were almost certain to result from the intervention of the lower federal courts. *Burford*, 319 U.S. at 335, 63 S.Ct. at 1108. In the instant case there are no difficult questions of state law presented. Rather, with regard to the FWPCA Congress has enacted a pervasive federal system of regulation from which it has carved out an area for state regulation. The parameters of that state regulation are effectively set by a comprehensive set of federal laws and regulations. *Cargill*, 508 F.Supp. at 747. Congress has provided for enforcement of those federal standards through the combined efforts of state agencies, federal agencies and private citizens. The state has no exclusive control or expertise. There is no reason to believe that state courts have any greater competence in interpreting these federal guidelines than do federal courts. *Cargill*, 508 F.Supp. at 747. Therefore, *Burford* abstention would be inappropriate.

The undersigned also believes that *Colorado River* abstention would be inappropriate in the instant case. In the *Colorado River* case, the Court indicated that the district court's discretion to dismiss or stay an action is narrowly circumscribed, and only with the presence of exceptional circumstances will the existence of concurrent state proceedings warrant the abdication of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River,* 424 U.S. at 817–18, 96 S.Ct. at 1246. The circumstances under which the district court may dismiss on grounds of the *Colorado River* abstention doctrine are even more limited than the circumstances under which *Pullman, Burford* or *Younger* abstention would be appropriate. *Id.,* at 818, 96 S.Ct. at 1246.

The Court declined to establish a hard and fast rule for determining when exceptional circumstances exist which would warrant a *Colorado River* dismissal, but instead identified several factors relevant to the decision. *See Cone Memorial Hospital v. Mercury Construction Corp.,* — U.S. ——, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. *Colorado River,* 424 U.S. at 819–820, 96 S.Ct. at 1247. Only the clearest of justifications will warrant dismissal. *Id.*

The *Colorado River* Court identified the following factors for consideration:

The inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums.

*Id.,* at 819, 96 S.Ct. at 1247. Two other factors are identified by the Court in *Cone Memorial Hospital.* First is whether federal law or state law provides the rule of decision. *Cone Memorial Hospital,* — U.S. at ——, 103 S.Ct. at 941. Second is the adequacy of the state court to protect the interests of the parties. *Id.,* at —— ——, 103 S.Ct. at 941–44.

Other cases have identified various additional factors such as the existence of a federal policy militating either in favor or against a stay [or dismissal], *Union Electric Co. v. EPA,* 593 F.2d 299, 304–305 (8th Cir.), *cert. denied,* 444 U.S. 839, 100 S.Ct. 76, 62 L.Ed.2d 50 (1979), the identity of issues [or parties] in the two forums or lack thereof, *United States v. West Penn. Power Co.,* 460 F.Supp. 1305 (W.D.Pa. 1978), and the existence of an important countervailing federal interest which federal courts might be more likely than state courts to respect or enforce. *Bio-Analytical Services, Inc. v. Edgewater,* 565 F.2d 450 (7th Cir.1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978).

■ In deciding whether or not to dismiss a pending action because of parallel state-court litigation, the court must carefully balance the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. *Cone Memorial Hospital,* — U.S. at ——, 103 S.Ct. at 937. The weight to be given to any one factor may vary from case to case, depending on the particular setting of the case. *Id.*

Applying the *Colorado River* factors to this case, the exceptional circumstances necessary for the granting of a dismissal have not been shown. On the contrary the majority of relevant factors, far from supporting abstention, actually counsel against it.

The federal forum is certainly not more inconvenient than the state forum in this case. In fact, the federal court in Greeneville, Tennessee, is a much more convenient forum for these Bristol defendants than would be the Chancery Court in Davidson County. In the *Colorado River* case the Court was affected at least in part by the fact that the district court was three hundred miles from the more convenient site of the state court proceedings.

The factor that the *Colorado River* Court relied on as most important in its

determination to dismiss was the clear federal policy of the avoidance of piecemeal litigation with regard to water rights as evidenced by the McCarran Act. The Court identified the basis of that policy as follows:

> ... This policy is akin to that underlying the rule requiring that jurisdiction be yielded to the court first acquiring control of property, for the concern in such instances is with avoiding the generation of additional litigation through permitting *inconsistent dispositions of property.* This concern is heightened with respect to water rights, the relationships among which are highly interdependent. Indeed, we have recognized that actions seeking the allocation of water essentially involve the disposition of property and are best conducted in unified proceedings. The consent to jurisdiction [in state courts] given by the McCarran Amendment bespeaks a policy that recognizes the availability of comprehensive state systems for adjudication of water rights as the means of achieving those goals.

(Emphasis added) *Colorado River,* 424 U.S. at 820, 96 S.Ct. at 1247. In this case there does not appear to be a serious possibility of conflicting obligations being placed on the defendants. While it is possible that the federal court might impose greater sanctions on the defendants than those imposed by the state court or impose a heavier penalty, in all probability those sanctions would be cumulative rather than conflicting. This is quite unlike the danger presented in *Colorado River,* where a very real possibility existed of conflicting dispositions of rights with respect to a limited amount of water. In that case if the dispositions were not virtually identical, then fulfilling the orders of both the state and federal courts would be impossible.

More importantly, with regard to the FWPCA, Congress has demonstrated a policy of approving piecemeal litigation under the proper circumstances. For example, under the FWPCA concurrent actions may be brought by the EPA and a state agency or a private citizen and a state agency

where the state fails to "diligently prosecute a civil or criminal action for enforcement." 33 U.S.C. § 1365. *See also Cargill, supra,* 508 F.Supp. at 741.

The other factor identified in *Colorado River* was the order in which jurisdiction was obtained by the concurrent forums. In that case the complaint was filed in District Court on November 14, 1972. The federal government was served in the state proceedings on January 3, 1973. However, prior to the institution of the suit in the district court the government had previously pursued adjudication of water rights and other water claims through the state system. The bringing of the suit in federal court by the government was an unexpected development. *See Colorado River,* 424 U.S. at 821, 96 S.Ct. at 1248. In the instant case, there was nothing unexpected about the plaintiffs' suit in the district court. In fact, the defendants, the EPA and the State of Tennessee were all given the 60-day period by either the EPA or the State of Tennessee. At the end of that period the only place the plaintiffs could bring their action was in federal district court. Thus, in this case the order in which the concurrent forums obtained jurisdiction militates in favor of retaining jurisdiction.

Another factor counselling against dismissal is the presence of federal rather than state law issues. The Supreme Court has recently indicated that "although in some rare circumstances the presence of state-law issues may weigh in favor of that surrender [of federal jurisdiction], the presence of federal-law issues must always be a major consideration weighing against surrender." *Cone Memorial Hospital,* —— U.S. at ——, 103 S.Ct. at 942.

■ Additionally, as *Cone Memorial Hospital* indicates, *id.* at ——–——, 103 S.Ct. at 941–44, the District Court must consider the adequacy of the state court proceedings in protecting the rights of the parties. This factor is especially relevant with regard to the FWCPA where Congress has pronounced an express policy of promoting citizen participation in the pro-

tection of our nation's waterways from pollution. 33 U.S.C. § 1251(e). *See also* 33 U.S.C. § 1365 (citizen suits) and § 1369(b) ("any interested person" may seek judicial review of various particular actions of the Administrator). Under 33 U.S.C. § 1365(b)(1)(B) if the Administrator or a state has commenced an action in a court of the United States, even diligently, any citizen may intervene as a matter of right. Private citizens may not intervene in Tennessee Water Quality Control Board Hearings as a matter of right. T.C.A. § 69–3–101, *et seq.* To dismiss this case at this point might "freeze out" valuable citizen input in the process of enforcement. *See Baughman v. Bradford Coal Co.*, 592 F.2d 215 (3d Cir.), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979). Whether or not citizen input would affect the outcome in this case cannot be determined at this point. Certainly some of the strongest advocates for eliminating any water pollution in Boone Lake would be the riparian landowners themselves whose interests are directly affected. This is evidenced by their complaint which in some instances seeks more stringent relief than that ordered by the State Commissioner. For example, the plaintiffs in this action ask that a $10,000 per day civil penalty be assessed against the defendants. The Commissioner imposed a civil penalty of $150,000. Depending on the number of days of violation found, the penalty sought by the plaintiffs could more than double that imposed by the Commissioner. Another obvious difference in the requested relief is that with respect to clean-up operations the plaintiffs ask that the defendants be ordered to restore Boone Lake and Beaver Creek, while the Commissioner orders only the clean-up of the sludge bed. It is possible that the state court proceedings could turn out to be inadequate to fully protect the interests of the plaintiffs.

Moreover, there is some question that the Tennessee Water Quality Control Board even qualifies as a "court" within the meaning of Section 1365(b). *See Baughman v. Bradford Coal Co., Inc., supra.* In *Baughman*, the Third Circuit,

interpreting the language of 42 U.S.C. § 7604(a)(1), the citizen suit section of the Clean Air Act, held that the Pennsylvania Environmental Health Board is not a "court of ... a state." The court noted that before an administrative agency may be considered a "court" within the meaning of the Clean Air Act it must have the "power to accord relief which is the substantial equivalent to that available to the EPA in federal courts under the Clean Air Act." *Id.*, at 219. The Pennsylvania Environmental Hearing Board was found not to be a "court" since it lacked power to issue injunctions. The Tennessee Water Pollution Control Board also lacks this injunctive power; the Commissioner may only seek injunctive relief through an appropriate court. T.C.A. § 69–3–117. The relevant language with regard to citizen suits in the Clean Air Act is identical to the equivalent language in the FWPCA. While the undersigned expresses no opinion as to the effect of the *Baughman* holding in the Sixth Circuit, the existence of such an issue certainly counsels against a dismissal.

■ Finally, through the notice requirements of 33 U.S.C. § 1365(b) Congress has in essence identified those cases in which federal courts cannot take jurisdiction because of a concurrent state court proceeding. In an area such as the enforcement of the FWPCA where cooperation between federal and state courts is vital, such legislative guidance is invaluable. Though *Colorado River* abstention is a judicial doctrine, its use must be undertaken with great caution where, as in this case, Congress has established a comprehensive scheme for determining the order in which enforcement actions may be brought by various agencies or citizens and the litigants have followed that scheme.

The defendants argue that the spirit of 33 U.S.C. § 1365(b)(1) has been satisfied since the state is now diligently pursuing this action and that therefore the case for dismissal is stronger. The undersigned does not find this argument persuasive. Section 1365(b)(1) indicates that no citizen suit may be commenced if the state (1) has

commenced and (2) is diligently prosecuting the action in a state court. Obviously, Congress was concerned not only with the strength of the enforcement efforts, but also the timing of those efforts. Timing of pollution abatement efforts is often of critical importance. Requiring that the state action be commenced within the 60-day notice period is a strong method of insuring prompt response. While the state may now be satisfying the spirit of § 1365(b)(1) with respect to the strength of the enforcement efforts it is making, it has not satisfied the spirit of the section with respect to timing. That spirit can only be satisfied by bringing the state action promptly. The state knew of the alleged violations of the FWPCA in May of 1983. Late in May and early in June, the Commissioner had collected samples and run tests on them. The results of those tests revealed obvious violations. *See* defendants' Exhibit A. No explanation is presented which would explain why no action was taken by the state until two weeks after the plaintiffs filed their complaint in federal court. The undersigned is also concerned that if the Court were to adopt the defendants' position then state agencies and polluters could ignore the time requirements of Section 1365(b) by "diligently" prosecuting late actions and thus bar any further citizen participation. Obviously, this was not the intent of Congress.

■ Therefore, the undersigned concludes that under all of the circumstances in this case *Colorado River* abstention would be inappropriate and that this action should not be dismissed.

## II.

### Stay

The defendants argue that even if a dismissal is not appropriate on abstention grounds, that this Court should stay the action pending the outcome of the state proceedings.

The same factors which would prevent this Court from dismissing this action also prevent it from staying this action. The Supreme Court has recently spoken on this issue as follows:

> We have no occasion in this case to decide whether a dismissal or a stay should ordinarily be the preferred course of action when a district court properly finds that *Colorado River* counsels in favor of deferring to a parallel state court suit. We can say, however, that a stay is as much a refusal to exercise federal jurisdiction as a dismissal. When a district court decides to dismiss or stay under *Colorado River,* it presumably concludes that the parallel state court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all. Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.

*Cone Memorial Hospital,* —— U.S. at ——, 103 S.Ct. at 943. It is possible that staying this action would eliminate the plaintiffs from any participation at all in the enforcement of the effluent standards. For example, if the Tennessee state court was to affirm the $150,000 penalty ordered by the Commissioner, the doctrine of collateral estopped could operate to bar the plaintiffs from seeking a greater fine.[1]

The defendants rely on *U.S. v. Cargill, Inc., supra,* to support their argument that this action should be stayed. *Cargill* involved a suit brought by the EPA to enjoin Cargill from further violations of its discharge permit. The District Court of Delaware, though refusing to abstain, granted the defendants a limited stay. Even assuming that *Cargill* is not seriously undercut by the Supreme Court's recent pro-

---

**1.** However, the undersigned expresses no opinion as to whether collateral estoppel would bar

the plaintiffs' action under those circumstances.

nouncement in *Cone Memorial Hospital,* the decision in *Cargill* is inapposite. In *Cargill,* the Delaware Department of Natural Resources and Environmental Control (DNREC) had in 1978 twice filed actions in state court to enforce pollution standards; in the first it had sought to enforce state standards, and in the second NPDES standards. DNREC and Cargill later entered into a stipulated settlement wherein Cargill was required to pay a $5,000 fine and begin a proposed construction schedule to abate the pollution problem. This abatement program was halted in March of 1980 when the EPA filed an action to enjoin Cargill from violating the terms of its permit. Obviously, the order in which the state and federal actions were brought is different than in the instant case. In addition, the *Cargill* court noted that

> ... the United States by seeking injunctive relief in the present suit has brought Cargill's construction efforts to a halt and is thus thwarting the principal goal of the Clean Water Act—the prevention of water pollution.... The fact that the present suit is preventing the expeditious cleansing of our nation's waters is *the only truly exceptional circumstance presented here.*

(emphasis added) *Cargill, supra,* 508 F.Supp. at 749–750. In light of this interference with Cargill's construction plan, the Court granted a limited stay which was to be absolved no later than the date on which construction of the wastewater treatment was completed, unless good cause was shown for extending the stay. *Id.,* at 751. In the instant case, the plaintiffs' suit did not interfere with an ongoing pollution abatement program. If anything, the plaintiffs' actions may have prodded the state agency into action. The defendants have shown no "clear case of hardship or inequity in being required to go forward" in the federal forum. *Landis v. North American Co.,* 299 U.S. 248, 256, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). Accordingly,

the defendants' motion for the Court to stay this action should be denied.

### III.

#### Section 1983

The defendants contend that the Supreme Court's decision in *Middlesex Cty. Sewerage Auth. v. Nat. Sea Clammers, supra,* bars the plaintiffs' claim pursuant to 42 U.S.C. § 1983 that the defendants have violated their First, Fifth and Fourteenth Amendment rights. In *Middlesex* the Court held:

> When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983 ... when a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing the suit under § 1983. As discussed above, the FWPCA and MPRSA do provide quite comprehensive enforcement mechanisms.

*Middlesex,* 453 U.S. at 20, 101 S.Ct. at 2626.

The decision in *Middlesex* addressed only the issue of whether or not a claimed violation of a federal statutory right was cognizable under § 1983 where sufficient remedial devices were already present in the federal statute. There was no mention of alleged violations of constitutional rights accompanying the alleged statutory violation.[2]

The plaintiffs in the instant case allege that their claim under Section 1983 is based on alleged violations of their constitutional rights, as distinct from any statutory rights created by the FWPCA. Whether a plaintiff can use Section 1983 as a remedy for conduct that allegedly violates both the FWPCA and the First, Fifth or Fourteenth Amendments is a question left open after *Middlesex.* Lower court decisions interpreting *Middlesex* are in disarray and pro-

---

**2.** Alleged violations of the Fifth, Ninth, and Fourteenth Amendments were raised and dismissed at the district court level, but not ad-

dressed in the Court's opinion. *See Middlesex,* 453 U.S. at 6, 101 S.Ct. at 2619.

vide little guidance. Several courts have indicated that *Middlesex* applies to constitutional claims arising out of the same facts which give rise to a statutory claim. *See, e.g., Smith v. Cumberland School Comm.,* 703 F.2d 4, 8 (1st Cir.1983) (EAHCA claim); *Hurry v. Jones,* 560 F.Supp. 500, 509 (D.C.R.I.1983) (EAHCA claim); *H.R. v. Hornbeck,* 524 F.Supp. 215, 223 (D.C.Md.1981) (Title VII claim). On the other hand, district courts have, at least in some cases, found these derivative constitutional claims not barred by *Middlesex. See, e.g., Baruah v. Young,* 536 F.Supp. 356 (D.C.Md.1982) (Title VII and equal protection claim); *Turillo v. Tyson,* 535 F.Supp. 577, 580–582 (D.C.R.I.1982) (EAHCA and equal protection claim).

However, this court need not address this obviously difficult question at this time. The plaintiffs have asked for injunctive relief and for the assessment of a civil penalty. The relief which the plaintiffs seek under Section 1983 is identical to that sought under the FWPCA. Any set of facts which would support recovery under Section 1983 would also support the same recovery under the FWPCA. The plaintiffs have not sought any damages under Section 1983 which might be unavailable under the FWPCA. Additionally, the plaintiffs may recover their costs of litigation including attorney and expert witness fees under 33 U.S.C. § 1365(d) if the court determines that such an award is appropriate, so there would be no necessity of looking to 42 U.S.C. § 1988. Therefore, the undersigned is of the opinion that the best course to follow is to pretermit this issue unless and until it should become necessary to decide it.

Accordingly, it is the recommendation of the undersigned that the defendants' motion to dismiss or stay be DENIED.[3]

---

**3.** Any objections to this report and recommendation must be filed within 10 days of its service or further appeal will be waived. 28 U.S.C.

§ 636(b)(1)(B) and (C). *United States v. Walters,* 638 F.2d 947–950 (6th Cir.1981).