THREE J'S INDUSTRIES, INC., Appellant, v. THE METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO, Appellee.

First District (2nd Division)   No. 84—3023

Opinion filed December 31, 1985.

Stone, Pogrund & Korey, of Chicago (Bertram A. Stone, of counsel), for appellant.

Allen S. Lavin, of Chicago (James B. Murray and Maureen K. Whelan, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

This appeal is from an order of the circuit court affirming on administrative review an order of the Metropolitan Sanitary District of Greater Chicago (district). The issues presented for review are whether: (1) the appointment of the hearing officer who conducted show-cause hearings was in accordance with law; (2) the hearing officer in having reconvened the show-cause hearing to allow new evidence and in submitting his report through the general superintendent violated due process rights or any statute; (3) the order exceeded statutory authority; and (4) the order was preempted by State statute.

Three J's Industries, Inc. (Three J's), is in the electroplating business. It was charged with discharging pollutants into the sewage system of the district at levels allegedly in excess of those allowed by ordinance. Violation notices were sent by the district to Three J's in April of 1982. A series of proceedings were held in which Three J's was given opportunities to show cause for its discharges. The hearings were conducted by a registered professional engineer assigned to act as hearing officer on behalf of the board of commissioners (board)

of the district and the chief engineer. Nothing in the record demonstrates or suggests that the hearing officer was a member of the board or an officer or employee of the district.

At the series of hearings, the first commencing September 30, 1982, testimony was heard regarding the level of pollutants in Three J's' discharge and its treatment process. About six months later, on March 1, 1983, the hearing officer orally set out his findings and recommendations which included a compliance date of September 1, 1983. At the conclusion of the March 1 hearing, the hearing officer presented his findings and recommendations to the general superintendent for consideration and ultimate presentation to the board.

Prior to the preparation and submission to the board of the hearing officer's written report, the latter was informed of further problems at the districts facility resulting from Three J's' discharge. The report was then held in abeyance pending further investigation and the show-cause hearings were reconvened on September 12, 1983. At the reconvened hearings there was evidence of malfunctions in Three J's' treatment system and of a rise in the level of pollutants that it discharged.

Ultimately in December 1983, the board approved the recommendations made by the hearing officer, the chief engineer, and the general superintendent. The board issued an order directing Three J's to: (1) suspend cadmium plating operations in the event of any pretreatment system problems; (2) maintain an adequate supply of spare parts for its treatment system; (3) report the transfer of all residues; and (4) submit the results of analysis of samples of discharge. Three J's administrative review action in the circuit court challenged the board's order; however, the circuit court affirmed. This timely appeal followed.

I

■ Three J's maintains that the appointment of the hearing officer was not in accordance with law because he was not designated by the board as required, but was the representative of the chief engineer, and because he was not an employee of the district.

Show cause proceedings are authorized by "An Act to create sanitary districts ***" (Act) (Ill. Rev. Stat. 1983, ch. 42, pars. 326bb(8) and 326bb(11)) and may be conducted by any member, officer, or employee of the district who is designated by the board. Courts have recognized the efficacy of appointing hearing officers where there is no statutory requirement that a board conduct hearings itself. (*Starnawski v. License Appeal Com.* (1981), 101 Ill. App. 3d 1050,

1053, 428 N.E.2d 1102; *Betts v. Department of Registration & Education* (1981), 103 Ill. App. 3d 654, 661-62, 431 N.E.2d 1112.) In *Rauland Division, Zenith Radio Corp. v. Metropolitan Sanitary District* (1973), 9 Ill. App. 3d 864, 868-69, 293 N.E.2 432, the Act was construed to permit delegation of the board's authority to conduct hearings, and the court explicitly approved the selection of an assistant engineer to preside at a hearing. Three J's points out, however, that the appointment of the registered professional engineer here as a hearing officer to act on behalf of the board and the chief engineer did not comport with section 7bb(11) of the Act (Ill. Rev. Stat. 1983, ch. 42, par. 326bb(11)) which provides in part that the board, or any member of the board, or officer or employee designated by the board may conduct the hearing.

The transcript of the initial hearing before the designated hearing officer reveals that the officer identified himself and stated his credentials at the outset of the hearing. No question was raised as to his competence to conduct the hearing. Nor did Three J's challenge his authority or jurisdiction to conduct the proceedings. In fact, Three J's stipulated to receipt of notice of hearings as well as certain allegations contained in the notice and the authenticity and admission into evidence of certain exhibits. At a subsequent hearing, reopened for receipt of new evidence, Three J's affirmatively asserted and acknowledged that the hearing officer represented the board of trustees, rather than the chief engineer or the general superintendent. Had objection to the hearing officer's authority been raised in a timely fashion, the issue could have been resolved at the initial stages of the proceedings, instead of at the end after lengthy and extensive hearings, when the unfavorable outcome had become known. Under the foregoing circumstances, Three J's has waived any objection it may have had to the hearing officer's authority to proceed. (*Satterfield v. Edenton-Chowan Board of Education* (4th Cir. 1975), 530 F.2d 567, 574-75; *R.A. Holman & Co. v. Securities & Exchange Com.* (2d Cir. 1966), 366 F.2d 446, 454-55; *Lakeside Community Hospital v. Tahoe Regional Planning Agency* (D. Nev. 1978), 461 F. Supp. 1150, 1158.) Moreover, no prejudice has developed upon Three J's in any event, since the entire record was ultimately considered and the order approved by the board. See *Bruns v. Department of Registration & Education* (1978), 59 Ill. App. 3d 872, 875, 376 N.E.2d 82; *Empire Trails, Inc. v. United States* (D.D.C. 1942), 53 F. Supp. 373, 375-76.

## II

■ Three J's next asserts that it was denied due process and that

the Act's requirements were not followed when, prior to submitting a report to the board, the hearing officer reopened the show-cause hearing and it was revealed that the findings of the hearing officer were reviewed by the chief engineer and the general superintendent. It is urged that because the Act requires that the hearing officer transmit his report to the board (Ill. Rev. Stat. 1983, ch. 42, par. 326bb(11)) submission of his findings to the general superintendent was improper and constituted a hearing in violation of Three J's due process rights. Three J's also maintains that there was no new evidence to justify reopening the show-cause hearing, and that no proper notice was given regarding the reconvened hearing.

The district acknowledges that the Act requires the hearing officer to transmit his findings to the board. It correctly maintains, however, that prior to the issuance of a final appealable order the hearing officer was entitled to perfect the record by reconsidering his findings and recommendations and correcting any errors; and the oral pronouncement of the hearing officer was not final and appealable absent service on the parties of a written decision with findings. *Brown v. Sexner* (1980), 85 Ill. App. 3d 139, 145-46, 405 N.E.2d 1082; *Forberg v. Board of Fire & Police Commissioners* (1976), 40 Ill. App. 3d 410, 411-12, 352 N.E.2d 338.

At the reconvened hearings, there was additional testimony of a rising level of pollutants being discharged by Three J's and of malfunctions in Three J's treatment process. The Act does require transmission of the hearing officer's report to the board; however, as Three J's concedes by its earlier argument, the general superintendent or chief engineer could themselves have been appointed to conduct the hearings under the statute. (Ill. Rev. Stat. 1983, ch. 42, par. 326bb(11).) Nor was it improper for the officer to have delayed submission of his report until hearing the newly discovered evidence. Further, the officer's transmission of documents to the board via the general superintendent was not irregular (*Rauland Division, Zenith Radio Corp. v. Metropolitan Sanitary District* (1971), 2 Ill. App. 3d 35, 39-40, 275 N.E.2d 756), and did not constitute a private hearing violative of due process.

### III

■ Three J's further contends that the board's order exceeded its authority because the Act provides the board with authority only to issue cease and desist orders (Ill. Rev. Stat. 1983, ch. 42, par. 326bb(8)), yet the instant order required: (1) maintenance of an adequate supply of spare parts for its treatment system; (2) reporting the

transfer of residues; and (3) submission of the results of analyses of samples taken from its discharge, all beyond the authority of the board.

The Act grants the board express powers to prevent pollution, from which other necessary powers may be implied. (*Rauland Division, Zenith Radio Corp. v. Metropolitan Sanitary District* (1971), 2 Ill. App. 3d 35, 38, 275 N.E.2d 756.) *A fortiori*, a cease and desist order must be based upon viable and actionable information and evidence and the Act indeed provides that an owner of a system which discharges into a district's water may be required to file information concerning the system. (Ill. Rev. Stat. 1983, ch. 42, par. 326bb(5).) The board's order to report transfer of residues and submit analyses of discharges therefore was proper. The order to maintain a supply of spare parts also was within the board's authorities under *Chicago Allis Manufacturing Corp. v. Metropolitan Sanitary District* (1972), 52 Ill. 2d 320, 327, 288 N.E.2d 436. In that case, the supreme court upheld an order requiring the installation of expensive equipment if it is reasonably necessary for the accomplishment of a police power purpose and is not otherwise unduly oppressive. Here, testimony at the show-cause hearings revealed that there had been problems obtaining spare parts for the treatment system. This was sufficient evidence to demonstrate that the board's order to maintain a supply of such parts was reasonably necessary to achieve the goal of preventing pollution.

## IV

■ In its final argument, Three J's asserts that the board's action is preempted by the Environmental Protection Act (EPA) (Ill. Rev. Stat. 1983, ch. 111½, par. 1001 *et seq.*).

Three J's cites sections 2(a)ii and 5(b) of the EPA (Ill. Rev. Stat. 1983, ch. 111½, pars. 1002(a)(ii), 1005(b)), which provide in part that because environmental damage does not respect political boundaries, it is necessary to establish a unified statewide program for environment protection and that standards may be determined, defined and implemented by the Pollution Control Board. Section 2(a)(iv) of the EPA (Ill. Rev. Stat. 1983, ch. 111½, par. 1002(a)(iv)) also provides that the State must "encourage and assist local governments to adopt and implement environmental-protection programs consistent with this Act ***." Thus, unless the EPA has preempted the authority or program of the district, or unless the district's rules or ordinances are in conflict with any provisions of the EPA, its authority, or programs, rules and ordinances may stand and be enforced concurrently with the EPA and any rules or standards adopted by the State agency. Three

J's does not identify any conflict between the EPA and the district's order. Nor does citation of section 20(b) of the EPA (Ill. Rev. Stat. 1983, ch. 111½, par. 1020(b)), relied upon by Three J's, demonstrate such a conflict since section 20(b) articulates a legislative declaration and finding concerning the disposal of wastes without causing environmental damage.

The statute creating the district and authorizing it to conduct its activities has been before the Illinois General Assembly on many occasions since the EPA was adopted on June 29, 1970, and the district boundaries have been enlarged and extended many times since that date. (See Pub. Acts 77—13; 77—47; 77—550; 77—639; 78—145; 78—149; 78—1187; 78—1193; 82—784; 82—1051.) Section 7a of the Act creating the district (Ill. Rev. Stat. 1983, ch. 42, par. 326a), effective October 1, 1975, five years after the enactment of the EPA, prescribes, in part:

> "It shall be unlawful, for any person, firm, association or corporation in possession of or controlling and operating any industrial or manufacturing plant to discharge into the sewers or works of a sanitary district or into any sewer connected therewith, any discharge of any nature whatever from any industrial or manufacturing plant except upon such terms and conditions as such sanitary district might reasonably impose.
>
> Any sanitary district, in addition to all other powers vested in it and in the interest of public health and safety, is hereby empowered to pass all ordinances, rules or regulations necessary to implement this Section ***."

From the foregoing, no conflict is evident between the provisions of the EPA and the Act, nor is preemption of the district's authority to issue the subject order apparent.

Accordingly, the decision of the circuit court on administrative review of the challenged order must be affirmed.

Affirmed.

STAMOS, P.J., and BILANDIC, J., concur.