ILLINOIS PUBLIC INTEREST RE-SEARCH GROUP, Citizens for a Better Environment, and Maria Michalski, Plaintiffs,

v.

PMC, INC., through its subsidiary or division, PMC SPECIALTIES GROUP, Defendant.

No. 92 C 5564.

United States District Court, N.D. Illinois, E.D.

Oct. 14, 1993.

---

Robert J. Zaideman, James Richard Epstein, Jerry A. Esrig, Jeffrey Logan Whitcomb, Brian R. Worth, Epstein, Zaideman & Esrig, P.C., Chicago, IL, Andrew Buchs-

aum, National Environmental Law Center, Ann Arbor, MI, for plaintiffs.

James A. Vroman, Kenneth T. Kristl, Timothy John Rooney, James A. Nolan, Jr., Stephen A.K. Palmer, Winston & Strawn, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

GOTTSCHALL, United States Magistrate Judge.

This matter is before the court on defendant's motion to dismiss this citizens' action under the Federal Water Pollution Control Act ("Clean Water Act" or "Act"), 33 U.S.C. § 1251 *et seq.* Alternatively, defendant would have the court stay the action until the completion of certain administrative proceedings before the Metropolitan Water Reclamation District of Greater Chicago ("the MWRD"). For the reasons set forth below, the motion is denied.

### BACKGROUND [1]

Defendant PMC, Inc., through its subsidiary PMC Specialties Group, owns and operates a facility at 735 East 115th Street in Chicago, Illinois. The facility is used for organic chemical manufacturing. Defendant discharges wastewater to MWRD's Calumet Wastewater Reclamation Plant ("Calumet WRP"), which later discharges wastewater into the Little Calumet River after treatment. Plaintiffs contend that each day defendant discharges approximately 1,600,000 gallons of contaminated wastewater into the Calumet WRP. Since treatment in the WRP does not remove all toxic chemicals, the discharge affects the quality of wastewater discharged by the Calumet WRP into the Little Calumet River. According to plaintiffs, since April 1990 or before, defendant's wastewater has contained pollutants in excess of the discharge limits under the Act.

Plaintiffs describe the relationship between the MWRD and the applicable statutory framework in their complaint. They allege that the MWRD is a publicly owned treatment works ("POTW") under regulations implementing the Act. 40 C.F.R. § 403.3(*o*).[2] As a POTW discharging pollutants directly into the waters of the United States, the MWRD must obtain from the United States Environmental Protection Agency ("the USEPA") or from an authorized state agency a National Pollution Discharge Elimination System ("NPDES") permit. Such a permit specifically authorizes and limits the discharge of particular pollutants. The Calumet WRP, then, must be operated in compliance with discharge limits under the Act.

Corporations like defendant that initially discharge pollutants into a wastewater treatment plant must also comply with the discharge limits under the Act. According to plaintiffs, those limits, called industrial pretreatment standards, are developed by the USEPA (based on the industrial category of the discharge) or an authorized POTW (here the MWRD) or both. The USEPA industrial pretreatment standards applicable to defendant's operations are the chemical manufacturing pretreatment standards at 40 C.F.R., Part 414. In addition, defendant is subject to the MWRD's own industrial pretreatment standards or "local limits" for companies that discharge into the Calumet WRP. The MWRD's Sewage and Waste Control Ordinance ("the Ordinance") sets forth local limits which are enforceable under § 307(d) of the Act as pretreatment standards. 40 C.F.R. § 403.5(d). The USEPA pretreatment standards are also incorporated into the Ordinance at Appendix C. In this lawsuit, plaintiffs seek penalties for defendant's alleged failure to comply with the USEPA's pretreatment standards, as well as the MWRD's local limits. Injunctive relief is also requested.

■ As required under Act § 505(b)(1)(A), 33 U.S.C. § 1365(b)(1)(A), on or around June 15, 1992, plaintiffs served a 60–day notice of

---

1. On this motion to dismiss under Fed.R.Civ.P. 12(b)(1), the court may look beyond the jurisdictional allegations of the complaint and consider whatever evidence has been submitted on the issue of subject matter jurisdiction. *Capitol Leasing Co. v. Federal Deposit Ins. Corp.,* 999 F.2d 188, 191 (7th Cir.1993). At the same time, the court accepts as true all well-pleaded factual allegations in the complaint and it draws reasonable inferences in favor of plaintiffs. *Id.*

2. References to the Code of Federal Regulations are to the July 1, 1992 edition of 40 C.F.R. Parts 400 to 424.

their intention to bring this suit on defendant, the USEPA, and the Illinois Environment Protection Agency ("the IEPA"). The lawsuit was filed on August 18, 1992, naming PMC Specialties Group as defendant. Subsequently, the complaint was amended on September 24, 1992 to name PMC, Inc. as defendant. There having been no substantive changes to the complaint, nor allegations of unfair surprise or prejudice, the date the original complaint was filed is the date used in determining questions of timing under § 505. *Chesapeake Bay Foundation, Inc. v. Bethlehem Steel Corp.*, 652 F.Supp. 620, 628 (D.Md.1987); *Sierra Club v. Simkins Industries, Inc.*, 617 F.Supp. 1120, 1126 (D.Md. 1985), *aff'd*, 847 F.2d 1109 (4th Cir.1988), *cert. denied*, 491 U.S. 904, 109 S.Ct. 3185, 105 L.Ed.2d 694 (1989).

Neither the USEPA nor IEPA has instituted proceedings against defendant to redress the violations complained of in this lawsuit. However, before the filing of the complaint, the MWRD issued a notice of show cause hearing on June 29, 1992. In that notice, the MWRD stated its determination that discharges from defendant's facility violated the discharge limits under its Ordinance. Reply Brief, Ex. B. Later, on September 4, 1992, an amended notice of show cause hearing was issued, incorporating claims for additional violations on June 22, July 5, and August 11, 1992. Memorandum in Support of Motion to Dismiss, Ex. B.

Defendant resisted the MWRD's action by arguing that its ultimate wastewater discharge is actually a mixture of several discrete flows, not all of which flows are generated by its regulated processes. Because its process effluent is mixed with unregulated flows prior to treatment, defendant claims that it is entitled to the benefit of alternative discharge limits, which may be computed by the MWRD or by defendant with the written concurrence of the MWRD. 40 C.F.R. § 403.6(e). Defendant states that under applicable regulations, only the MWRD has the authority to determine whether streams should be classified as diluted or unregulated under the USEPA's combined waterstream formula.

Throughout the MWRD administrative proceedings, defendant has taken the position that the alleged discharge violations are attributable to sources beyond its control, including soil and ground-water contamination. Following negotiations, the MWRD and PMC entered into an Interim Consent Order ("ICO") in December 1992.[3]

The ICO contains statements of the parties' agreement that it was necessary to derive alternative limits for application to defendant's mixed effluent and that the accurate calculation of defendant's alternative discharge limits was a critical step in determining what, if any, additional pretreatment was needed at defendant's facility. ICO, ¶¶ 14, 17. Defendant agreed to implement a work plan that would gather information needed to recalculate appropriate alternative discharge limits. ICO, ¶ 18. For its part, the MWRD allowed "that the implementation of the Work Plan is an appropriate action to take in light of the circumstances." ICO, ¶ 19. The MWRD was also designated the only entity with authority to approve alternative discharge limits. ICO, ¶ 16. A provision for facility monitoring further provided that defendant would reimburse the MWRD for its sampling costs. ICO, ¶ 23. Defendant was to complete its study by February 4, 1993, after which date the MWRD would reevaluate alternative discharge limits in light of the completed study. At that time, the parties would make a good faith effort to negotiate a final resolution to this matter, including the appropriate calculation of stipulated penalties for past violations. The parties agreed that prosecution of the notice to show cause would be continued until after February 4, 1993. ICO, ¶ 26.

The ICO contains no admission of liability and the parties expressed a preference that the matter be resolved without resort to adversarial proceedings. *See* ICO at 1. While provision was made for stipulated penalties if discharges were ultimately determined to exceed local limits or limits set by the USEPA, penalties were for the most part set at a maximum of $200 per day of viola-

---

3. Copies of the ICO are appended as Exhibit A to both defendant's opening brief and its reply brief.

tion. ICO, ¶¶ 24–25. There is no provision for an injunction in the ICO.

As of the date of this opinion, there apparently has been no final determination in the MWRD proceedings, even though defendant completed its study in February.

### DISCUSSION

In moving to dismiss, defendant advances three arguments as to why the court should dismiss or stay this action pending resolution of the proceedings before the MWRD.[4] This memorandum addresses each argument in turn.

*Jurisdictional Bar Under Act § 505(b), 33 U.S.C. § 1365(b)*

■ Section 505(b)(1)(B) sets forth an exception to the federal courts' exercise of jurisdiction over citizen suits under the Act. *Connecticut Fund for the Environment, Inc. v. Upjohn Co.*, 660 F.Supp. 1397, 1404 (D.Conn.1987). Under that section, a citizen suit may not be commenced

> if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

33 U.S.C. § 1365(b)(1)(B). Questions concerning the application of this section should be determined as of the time the federal complaint is filed. *See Upjohn*, 660 F.Supp. at 1404.

■ Defendant contends that a state action within the meaning of the statute was commenced before this federal lawsuit. Thus, it points out that the MWRD issued a notice of show cause hearing on June 29, 1992, approximately seven weeks before the filing of this lawsuit on August 18, 1992. As already noted, defendant and the MWRD subsequently entered into an ICO which requires that defendant implement a work plan that will facilitate the calculation of alternative discharge limits. Under the order, defendant may be liable for stipulated penalties for violations of the Ordinance or the Act. Defendant posits that the violations alleged in this suit are the same ones at issue in the MWRD proceedings. Since the calculation of proper alternative discharge limits is, in its view, critical to determine compliance with the Act, defendant asks that this action be dismissed or at least stayed until the MWRD reaches its decision.

Plaintiffs respond that the harm caused by defendant's violations of the Act pose an immediate threat to human health and to the environment, and they take issue with defendant's contention that the MWRD proceedings are the kind of action that would preclude their citizens' suit. Their argument concerning the proper characterization of the MWRD proceedings is twofold. First, they argue that action by the MWRD is not action by the State, as contemplated under the Act. Several decisions in fact conclude that action by a local governmental body is not action by a "State," within the meaning of § 505(b)(1)(B). *Public Interest Research Group ("PIRG") of New Jersey, Inc. v. Top Notch Metal Finishing Co.*, 26 Env't Rep. Cas. (BNA) 2012, 2014, 1987 WL 44393 (D.N.J.1987); *New York PIRG v. Limco Mfg. Corp.*, 697 F.Supp. 608, 610 (E.D.N.Y. 1987). In addition, plaintiffs argue that the MWRD show cause action is not action "in a court." This latter argument has provoked a good deal of discussion by both sides. Having reviewed their arguments, as well as the terms of the Ordinance, this court agrees with plaintiffs.

*ICI Americas, Inc.*, 777 F.Supp. 1032, 1035 (D.Mass.1991).

> Such a scenario may be a possibility, but it is far from certain. Having reviewed the ICO, this court does not find any assurance of relaxed standards within it. Consequently, in ruling on the other arguments made on the motion to dismiss, the court does not assume a likelihood that defendant will prevail before the MWRD.

---

4. In its reply brief, defendant asked the court to take into account the possibility that its discharge units would be relaxed as a consequence of the MWRD proceedings. While plaintiffs construed this argument as a claim of mootness, defendant disavows any argument that the action should be dismissed on that basis. Rather, defendant's position is that relaxation of the MWRD's discharge limits would render permissible conduct that at the present is illegal. *See Massachusetts PIRG v.*

Federal courts have expressed some disagreement as to whether an administrative action can be deemed "action in a court" within the meaning of § 505(b)(1)(B). 2 S. Novick, *Law of Environmental Protection* § 12.08[3][b][ii] at 12–180—12–181 (1993). Based on the plain language of the statute, a number of decisions have concluded that a citizen suit is not precluded unless the EPA or state regulators have already commenced a judicial proceeding "in a court." *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1525 (9th Cir.1987); *Friends of the Earth v. Consolidated Rail Corp.*, 768 F.2d 57, 62 (2d Cir.1985); *Lykins v. Westinghouse Elec. Corp.*, 715 F.Supp. 1357, 1359 (E.D.Ky.1989); *see also Maryland Waste Coalition v. SCM Corp.*, 616 F.Supp. 1474, 1481 (D.Md.1985) (citizen suit under Clean Air Act).[5] Those courts have reasoned that in enacting other statutes, Congress has demonstrated its ability to provide that either administrative or judicial proceedings will bar citizen actions. *See, e.g., SCM Corp., id.* There being no direct or veiled reference to any type of administrative proceeding in § 505, these decisions find that the unambiguous language of the statute supports a conclusion that a citizen enforcement suit is not precluded by nonjudicial enforcement action. *Chevron U.S.A.*, 834 F.2d at 1525.

The other line of decisions concludes that, in appropriate circumstances, agency action is the functional equivalent of action in court. Where this is so, agency action bars a citizen suit. *Student PIRG v. Fritzsche, Dodge and Olcott, Inc.*, 759 F.2d 1131 (3d Cir.1985); *Baughman v. Bradford Coal Co., Inc.*, 592 F.2d 215 (3d Cir.), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979).[6] Some conditions must be met, however, as a starting point, *Baughman* noted that a citizen suit provision must be construed in the light of Congressional intent that citizen suits

goad responsible agencies to more vigorous enforcement of anti-pollution standards. *Baughman*, 592 F.2d at 218. If agencies remain inert, the statute should provide an alternative enforcement mechanism. *Id.* Effective enforcement requires the power to impose penalties as a sanction, as well as the option of an injunction to enforce compliance. *Id.* Administrative enforcement orders must therefore be self-executing. *Fritzsche*, 759 F.2d at 1138. In addition, the administrative proceeding must provide the procedural safeguards available in a court proceeding and allow citizen intervention as a matter of right. *Id.* at 1138–1139; *Baughman*, 592 F.2d at 219. Discretionary intervention will not suffice. *Baughman, id.*

Defendant contends that the MWRD proceeding satisfies the test under the above line of cases, but this court disagrees. Article VI, § 3 of the Ordinance provides that following the hearing on a notice to show cause, the MWRD's Board of Commissioners may issue orders directing that prohibited activity be discontinued. Although that section contains no provision for intervention by interested citizens, it allows the taking of evidence and testimony at a hearing on the record. Also, that record is to be made available to any member of the public upon payment of the usual charges therefor. While the language of the Ordinance seemingly makes provision for procedural safeguards and does not explicitly preclude public intervention in the show cause proceedings, the Ordinance indicates that an MWRD directive issuing out of the proceeding is not self-executing. Thus, Article VII states that if a party fails to comply with an order of the Board of Commissioners, the MWRD may commence an action in the Circuit Court for the purpose of having the prohibited activity stopped by either mandamus or injunction. Defendant's case law authority is not to the

---

**5.** The provisions for citizen suits in the Clean Water Act and the Clean Air Act, 42 U.S.C. § 7604, contain identical language and have been treated interchangeably by the courts. *Student PIRG v. Fritzsche, Dodge and Olcott, Inc.*, 759 F.2d 1131, 1136 n. 4 (3d Cir.1985).

**6.** At least one court has found that the holdings in *Baughman* and *Fritzsche* do not survive the 1987 addition of § 309(g) to the Clean Water Act.

33 U.S.C. 1319(g). *PIRG of New Jersey v. Witco Chemical Corp.*, 31 Env't Rep. Cas. (BNA) 1571, 1576, 1990 WL 66178 (D.N.J.1990). Section 309(g) defines circumstances in which administrative enforcement action can preclude citizen suits. *Id.* This memorandum does not consider the issue, as defendant has made no argument that the proceedings before the MWRD meet the criteria of § 309(g).

contrary, as it does not address the question of whether the MWRD has the power to issue an injunction. *Three J's Industries, Inc. v. Metropolitan Sanitary Dist. of Greater Chicago,* 139 Ill.App.3d 667, 94 Ill.Dec. 283, 286, 487 N.E.2d 1160, 1163 (1st Dist. 1985).

The cases allowing administrative actions to preempt citizen suits make it clear that to be the functional equivalent of a judicial proceeding, an administrative proceeding must be able to provide an effective mechanism for vigorous enforcement of the Act. When, as here, the administrative body cannot enforce its own order, this court concludes that the pendency of a administrative proceeding does not act as a bar to suit in the federal courts.[7]

### Primary Jurisdiction

In this aspect of its argument, defendant asks the court to stay this proceeding to allow the MWRD to determine alternative discharge limits applicable to the discharge from its facility. The question of alternative discharge limits will involve application of the "combined waterstream formula" at 40 C.F.R. § 403.6(e). It is undisputed that MWRD has been delegated authority to make determinations under the formula, and that it possesses expertise in that area.

The doctrine of primary jurisdiction is concerned with the timing of judicial review of matters entrusted to the discretion and expertise of administrative agencies. *Natural Resources Defense Council, Inc. v. Outboard. Marine Corp. ("OMI"),* 692 F.Supp. 801, 809 (N.D.Ill.1988). Application of the doctrine entails a case-by-case determination of whether, in view of the purposes of the statute involved and the relevance of administrative expertise to the issue in question, the court should defer initially to the administrative agency. *Ryan v. Chemlawn Corp.,* 935 F.2d 129, 131 (7th Cir.1991). It has been noted, though, that if the doctrine applies at all to citizens' claims, it should be applied sparingly where the effect would be preemption of a citizen suit. *USEPA v. Environmental Waste Control, Inc.,* 710 F.Supp. 1172, 1195 (N.D.Ind.1989), *aff'd,* 917 F.2d 327 (7th Cir.1990) (*quoting Merry v. Westinghouse Elec. Corp.,* 697 F.Supp. 180, 182 (M.D.Pa.1988)). Otherwise, delay could frustrate the congressional intent of broadened enforcement that underlies the provision for citizen suits. *USEPA, id.* The concept of primary jurisdiction is also inapplicable where the question before the court is the enforcement of existing discharge standards. *PIRG of New Jersey v. Star Enterprise,* 771 F.Supp. 655, 666 (D.N.J.1991); *OMI,* 692 F.Supp. at 809. There is no encroachment on administrative expertise if the court is not being called upon to set effluent standards. *OMI, id.*

Because this court is not being called upon to determine discharge limits in this citizen action to enforce existing standards, it concludes that the doctrine of primary jurisdiction does not apply here.

### Abstention under Colorado River

Defendant also asks the court to abstain under the doctrine in *Colorado River*

---

7. Having made this determination, it is unnecessary to make a finding on the question of whether citizens may intervene in MWRD proceedings as a matter of right. Plaintiff cites one decision upholding the denial of a petition to intervene, but that case involved a different administrative body. *Citizens Against Randolph Landfill, (CARL) v. Pollution Control Board of County of MacLean,* 178 Ill.App.3d 686, 127 Ill.Dec. 529, 534–35, 533 N.E.2d 401, 406–407 (4th Dist. 1988).

Proceedings for judicial review of the MRWD's decisions are subject to the Illinois Administrative Review Law. 70 ILCS 2605/4.37. While plaintiff correctly notes that the Administrative Review Law specifically grants a right of intervention to parties that appeared before the administrative body, *see,* 735 ILCS 5/3–107, a provision for intervention on judicial review would very probably not apply to the administrative proceeding itself. While this would mean that an administrative body may be able to make its own rules concerning this issue, this court cannot agree with plaintiffs that citizen intervenors have no recourse to Illinois courts. *See CARL,* 127 Ill.Dec. at 534–35, 533 N.E.2d at 406–407 (hearing appeal of citizen group that had been denied intervention in administrative proceeding). Neither side here has presented any evidence of MWRD procedural rules governing intervention. While the absence of rules suggests that intervention is discretionary, this memorandum does not make a determination as to whether plaintiffs have a right to intervene before the MWRD.

*Water Conserv. Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Questions concerning the application of the *Colorado River* doctrine arise when substantially the same issues in a federal action are contemporaneously under consideration in a parallel state court action. *Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc.,* 962 F.2d 698, 700 (7th Cir. 1992). Under *Colorado River* a federal court balances a number of factors in determining whether to refrain from the exercise of its jurisdiction. These are (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of litigation in the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of the action in the state court to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Id.* (quoting *LaDuke v. Burlington N.R.R.,* 879 F.2d 1556, 1559 (7th Cir.1989)). Although the avoidance of duplicative litigation supports abstention, abstention cannot be based merely on the existence of a parallel state court proceeding. *Locke v. Bonello,* 965 F.2d 534, 537 (7th Cir.1992). The burden placed on a party invoking an abstention doctrine is a heavy one due to federal courts' obligation to exercise the jurisdiction given them. *Upjohn,* 660 F.Supp. at 1404 (citing *Colorado River,* 424 U.S. at 817–818, 96 S.Ct. at 1246–47). The party must therefore demonstrate either " 'exceptional circumstances' " or " 'a clear case of hardship or inequity in being required to go forward.' " *Id.* (quoting *Colorado River* at 817–819, 96 S.Ct. at 1246–47).

■ In its argument under *Colorado River,* defendant relies heavily on the fact that the MWRD has agreed to consider its proposal for alternative discharge limits. Predicting that there will be an adjustment to the present limits in its permit, defendant's argument under *Colorado River* focuses primarily on the concern that piecemeal litigation and conflicting rulings be avoided. De-

fendant argues that if the MWRD approves alternative discharge limits, this court's ruling would be based on inappropriate limits. Apparently making an assumption that this suit will come to a conclusion before the MWRD matter, defendant also protests that implementation of an injunctive order based on limits that are subsequently lowered would impose upon it unnecessary expenditures. Plaintiffs respond with a number of arguments, including a claim that state remedies are inadequate because there is no right of intervention before the MWRD. Although this court has found it unnecessary to reach a conclusion regarding the adequacy of proceedings before the MWRD, from the record it is clear that relief in the administrative proceeding would not be as broad as that which is requested here. Also, the court bears in mind that present limits remain in effect until modified by the MWRD. As already noted, this court does not agree that a lowering of its discharge limits is as certain as defendant seems to think it is. *See supra* note 4.

Similar abstention arguments have been rejected by a number of courts. *See, e.g., OMI,* 692 F.Supp. at 811; *Connecticut Fund for the Environment, Inc. v. Upjohn Co.,* 660 F.Supp. 1397, 1405 (D.Conn.1987); *Brewer v. City of Bristol,* 577 F.Supp. 519, 526 (E.D.Tenn.1983). Where, as here, there is a possibility of different sanctions, the problem is probably better described as one of cumulative sanctions, rather than conflicting or inconsistent rulings. *See Upjohn,* 660 F.Supp. at 1405. The above-cited decisions agree that any conflict in the rulings is properly addressed at the remedy stage of the lawsuit. *Id. See also OMI,* 692 F.Supp. at 822. Because this court is in agreement with the reasoning of these decisions, it will not abstain under the *Colorado River* doctrine.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss or stay this action is denied.