SIERRA CLUB and Mineral Policy Center,[1] Plaintiffs,

v.

EL PASO GOLD MINES, INC. Defendant.

No. 01–PC–2163.

United States District Court, D. Colorado.

April 11, 2002.

1. In the original Memorandum Opinion and Order, the court incorrectly identified plaintiff Mineral Policy Center as Natural Mineral Policy Center in the caption.

John M. Barth, Attorney at Law, Hygiene, CO, for plaintiffs.

James L. Merrill, Paul Gerard Anderson, Stephen Donnell Harris, Merrill, Anderson, King & Harris, Colorado Springs, CO, for defendant.

### *AMENDED* MEMORANDUM OPINION AND ORDER

COAN, United States Magistrate Judge.

This is a citizen suit under the Clean Water Act, 33 U.S.C. § 1251— § 1387. Jurisdiction exists under 33 U.S.C. § 1365(a) and 28 U.S.C. § 1331. The parties have consented to determination of this case by a United States Magistrate Judge under 28 U.S.C. § 636(c). The matters before the court are: (1) El Paso Gold Mines, Inc.'s Motion to Dismiss or to Stay [filed December 17, 2001]; (2) Plaintiffs' Motion for Partial Summary Judgment . . . [filed February 8, 2002]; and El Paso Gold Mines, Inc.'s Cross–Motion for Summary Judgment [filed March 4, 2002]. The court heard oral argument on April 3, 2002. The motions are ripe for disposition.

### I.

The Clean Water Act ("CWA" or "the Act") prohibits the discharge of pollutants from a point source into navigable waters except as specifically authorized by the statute.[2] 33 U.S.C. § 1311(a).

---

**2.** The term "discharge of pollutants" means "any addition of any pollutant to navigable

Plaintiffs allege the following pertinent facts in their complaint. Plaintiff Sierra Club is a national conservation organization "dedicated to exploring, enjoying and protecting the wild places of the earth" and "to practicing and promoting the responsible use of the earth's ecosystem's and resources." (Compl., ¶ 7) Plaintiff Mineral Policy Center is a public interest non-profit organization "dedicated to protecting the communities and the environment by preventing the environmental impacts associated with mining and mineral development, and by cleaning up pollution caused by mining." (*Id.* at ¶ 8) Plaintiffs bring this suit on their own behalf and on behalf of their members. (*Id.* at ¶¶ 8, 9)

Defendant El Paso Gold Mines, Inc. ("El Paso") owns and/or operates the El Paso gold mine, shaft and related mineral interests, properties and facilities located in Teller County, Colorado. (Compl., ¶ 14) El Paso conducts mining and related activities on its properties which impact the Cripple Creek watershed, a tributary of Fourmile Creek, which is a tributary of the Arkansas River. (*Id.* at ¶¶ 15–16) El Paso's gold mine, shaft, and other mining interests are located within the Cripple Creek Mining District ("Mining District") and within the mine permit boundary of the Cripple Creek and Victor Gold Mine, an active gold mine permitted by the Colorado Division of Minerals and Geology. (*Id.* at ¶¶ 17–19) The Mining District contains a series of underground tunnels, shafts, drains, adits, laterals, mine workings, stopes and pipes that drain subsurface waters from the Mining District, including El Paso's properties and mineral interests, into underground drainage tunnels. (*Id.* at ¶ 20) One of the man-made underground drainage tunnels in the Min-

ing District is the Roosevelt Tunnel. (*Id.* at ¶¶ 21–22) Portions of the Roosevelt Tunnel lie directly underneath, or lie in underground zones that intercept groundwater flow emanating from, El Paso's gold mine, shaft, properties and/or mineral interests, or "are connected to other underground workings, shafts, and laterals, and/or stopes that carry water originally emanating from Defendant's properties and/or mineral interests." (*Id.* at ¶ 44) The Roosevelt Tunnel continuously discharges pollutants into Cripple Creek. (*Id.* at ¶ 24) El Paso does not have a National Pollutant Discharge Elimination System ("NPDES" or "discharge") permit to discharge pollutants into, or from, Roosevelt Tunnel into Cripple Creek. (*Id.* at ¶ 25)

Plaintiffs claim that for the last five years and continuing to date, El Paso's gold mine, shaft, related properties and facilities have violated 33 U.S.C. § 1311(a) and § 1342 of the Clean Water Act by discharging pollutants into the Roosevelt Tunnel, and from there into Cripple Creek, without a valid NPDES permit. The pollutants discharged by El Paso include zinc and manganese which can pose a threat to public health, aquatic life, and the environment. (Compl., ¶¶ 38–39, 46)

Plaintiffs allege that defendant has not taken any action to reduce pollutant concentrations in the effluent discharge from Roosevelt Tunnel and does not operate a mechanical treatment system to cleanse the discharge. (*Id.* at ¶¶ 42–43)

Plaintiffs seek injunctive relief and civil penalties under 33 U.S.C. § 1319(d) and § 1365(a).

## II.

The parties have filed cross motions for summary judgment concerning the court's

---

waters from any point source." 33 U.S.C. § 1362(12). "Pollutant" is defined at 33 U.S.C. § 1362(6). A "point source" is "any discernible, confined and discrete conveyance

... from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). *See, also,* 40 C.F.R. § 122.2.

subject matter jurisdiction over this citizen suit. Defendant also moves for summary judgment on the issue of its ownership interest in property described by the parties as the El Paso shaft.

The purpose of summary judgment is to determine whether trial is necessary. *White v. York Int'l. Corp.,* 45 F.3d 357, 360 (10th Cir.1995). Summary judgment is appropriate under Fed.R.Civ.P. 56(c) when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The movant bears the initial burden to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to [the nonmovant's claim]." *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993)(internal citations omitted). The nonmovant has the burden to show that there are genuine issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Thomas v. International Business Machines,* 48 F.3d 478, 484 (10th Cir.1995). To defeat a properly supported motion for summary judgment, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Conclusory allegations will not create a genuine issue of material fact necessitating trial. *White,* 45 F.3d at 363.

On cross motions for summary judgment, the court may assume that no evidence other than that submitted by the parties need be considered; however, summary judgment is inappropriate if the court finds that disputes remain as to material facts. *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.,* 124 F.3d 1321, 1323 (10th Cir.1997)(internal citation omitted).

### III.

A. *El Paso Gold Mines, Inc.'s Motion to Dismiss or to Stay*

Defendant El Paso moves to dismiss or stay this case under the doctrines of primary jurisdiction and *Burford* [3] abstention because a Roosevelt Tunnel discharge permit application is pending before the Colorado Water Quality Control Division (CWQCD).[4]

The record shows that after El Paso received plaintiffs' notice of intent to file a citizen suit, El Paso formed Roosevelt Tunnel, LLC which submitted an application for a discharge permit for the Roosevelt Tunnel on October 12, 2001. (Affidavit of David H. Schoger, attached to El Paso Gold Mines, Inc.'s Motion to Dismiss or Stay, ¶¶ 12–14, and attached Ex. B) The permit application purports to cover all inactive mine drains into the Roosevelt Tunnel which are then discharged from the Roosevelt Tunnel portal

---

**3.** *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

**4.** The Environmental Protection Agency ("EPA") has delegated primary responsibility for permits to the CWQCD which administers the program pursuant to the Colorado Water Quality Control Act, COLO.REV.STAT. § 25–8–301, *et seq.*

into navigable waters. (Ex. B attached to Schoger Affidavit). Plaintiffs filed their citizen suit on November 5, 2001. The discharge permit application is pending before the CWQCD.

■ The doctrine of primary jurisdiction applies when judicial "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). When the doctrine of primary jurisdiction applies, the court stays the judicial proceedings while the contested issue is referred to the agency, or dismisses the case without prejudice if the parties would not be unduly prejudiced. *Reiter v. Cooper*, 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993).

El Paso argues that judicial deference to the CWQCD permit application process is appropriate because this case presents highly technical hydrologic and geologic issues regarding the sources of the water and constituents flowing through the Roosevelt Tunnel, and, thus, the identity of the dischargers. Defendant emphasizes that the Roosevelt Tunnel, which was constructed a century ago to drain subsurface water from mines within the District, is six miles long and runs under mining properties owned or operated by several parties. Defendant represents that the Roosevelt Tunnel portal is owned and controlled by the United States Bureau of Land Management. Defendant argues that the State of Colorado should have the first opportunity to use its expertise to make an initial determination regarding the CWA's applicability to mining tunnel discharges before the court makes a possibly inconsistent determination that defendant has violated the CWA. The state regulatory process provides an opportunity for judicial review in the state courts if plaintiffs are ultimately dissatisfied with the terms of a discharge permit or order issued by the CWQCD.

Plaintiffs contend that the doctrine of primary jurisdiction is not applicable to CWA citizen suits because Congress specified the statutory prerequisites to filing a citizen suit in 33 U.S.C. § 1365(b)(1)(A) and (B); and the Act does not preclude federal court jurisdiction when an application for a discharge permit is pending before the state agency. Plaintiffs argue in the alternative that the doctrine is inapplicable to the instant action because the issues raised in the complaint are within the conventional experience of the court to decide. In addition, the EPA and CWQCD have acknowledged the unpermitted discharges from the Roosevelt Tunnel for many years, but neither agency has issued a permit or order related to those discharges, or initiated an enforcement action against El Paso.

■ The primary jurisdiction doctrine should be applied sparingly to citizen suits; otherwise, delay by the agency could frustrate the congressional intent of broadened enforcement that underlies citizen suit provisions. *U.S. EPA v. Environmental Waste Control, Inc.*, 710 F.Supp. 1172, 1195 (N.D.Ind.1989), *aff'd* 917 F.2d 327 (7th Cir.1990); *Merry v. Westinghouse Electric Corp.*, 697 F.Supp. 180, 182 (M.D.Pa.1988); *see, also,* Zener, *The Federal Law of Water Pollution Control,* FEDERAL ENVIRONMENTAL LAW, at 733 (Dolgin & Gilbert, eds.1974). Some courts have held that the primary jurisdiction doctrine is inapplicable to citizen suits to enforce federal environmental laws. *See, e.g., California Sportfishing v. City of W. Sacramento*, 905 F.Supp. 792, 807 n. 21 (E.D.Cal.1995)(citizen suit under Clean Water Act); *Sierra Club v. Tri–State Gen-*

*eration and Transmission Ass'n, Inc.*, 173 F.R.D. 275, 284 (D.Colo.1997)(citizen suit under Clean Air Act); *Craig Lyle Ltd. Partnership v. Land O'Lakes, Inc.*, 877 F.Supp. 476, 483 (D.Minn.1995)(citizen suit under the Resource Conservation and Recovery Act ("RCRA")).

Several courts have concluded that the primary jurisdiction doctrine does not apply to CWA citizen suits where the plaintiff seeks to enforce the limitations contained in an existing discharge permit, even if an application to modify the terms of that permit is pending before the agency. *See Public Interest Research Group New Jersey v. Star Enterprise*, 771 F.Supp. 655, 666 (D.N.J.1991); *Natural Resources Defense Council, Inc. v. Outboard Marine Corp.*, 692 F.Supp. 801, 809 (N.D.Ill.1988); *Connecticut Fund for the Environment v. Job Plating Co., Inc.*, 623 F.Supp. 207, 215 (D.Conn.1985); *Illinois Public Interest Research Group v. PMC, Inc.*, 835 F.Supp. 1070, 1076 (N.D.Ill.1993). The rationale in those cases is that enforcement of the effluent restrictions set forth in an existing permit is within the competency of the court and does not encroach on the agencies' areas of expertise. *Id.*

At least two courts have declined to exercise jurisdiction over a citizen suit pending the agency's determination of a pertinent issue. In *Friends of Santa Fe County v. LAC Minerals, Inc.*, 892 F.Supp. 1333 (D.N.M.1995), the plaintiff alleged that a "waste pile" deposited by the past and present operators of a gold mine resulted in acid mine drainage in violation of RCRA and the CWA. Plaintiffs sought an order requiring defendants to obtain appropriate CWA and RCRA permits, to prevent acid mine drainages posing an imminent and substantial endangerment to human health and the environment, and to pay civil penalties to the United States. *Id.* at 1338. While the citizen suit was pending, the state environmental agency issued a final order approving a modification of the defendants' discharge permit which had been in effect since 1985. *Id.* at 1344. The court declined to exercise jurisdiction over the citizen suit on the ground that the court's assessment of whether the discharge would pose a risk to human health or environment would simply "second-guess" the determination of the state agency in the permit proceeding, and could subject the defendant mine operators to conflicting orders from the state agency and the court. *Id.* at 1349–1350.

In *Montgomery Environmental Coalition Citizens Coord. Comm. v. Washington Suburban Sanitary Comm'n*, 607 F.2d 378 (D.C.Cir.1979), plaintiff alleged that defendant was exceeding the volume of sewage allotted to one of its treatment plants pursuant to agreements between the affected jurisdictions. While the citizen suit was pending, the EPA issued a discharge permit for the treatment plant. Plaintiff objected to portions of the permit, including the effluent levels set by the agency. The court dismissed the citizen suit under the doctrine of primary jurisdiction because the technical issues which would be resolved in the EPA proceeding, including the appropriate levels of discharge, were relevant to the relief requested in plaintiff's citizen suit, and administrative resolution of the technical issues might preclude the need for the federal action. 607 F.2d at 381–82.

The instant action is similar factually to *U.S. Public Interest Research Group v. Heritage Salmon, Inc.*, 2002 WL 240440 (D.Maine 2002). There, plaintiff filed a citizen suit against the defendant for discharging pollutants into navigable waters without an NPDES permit. The defendant argued that the doctrine of primary jurisdiction applied because plaintiff was asking the court to write a discharge per-

mit for the defendant while defendant's discharge permit application was pending before the State of Maine. The court disagreed with defendant's interpretation of plaintiff's claim and declined to defer to the agency proceedings. The court held that the determination of whether defendant was unlawfully discharging pollutants without a permit did not involve the resolution of scientific or technical facts which clearly implicated the special expertise and competence of the administrative agencies, such as "the appropriate level and quantity of discharges, the effect of a discharge on water quality, or whether a drainage endangers human health." *Id.* at \*\*15–16. The court further noted that the court's decision would not result in an inconsistent outcome because the State of Maine had indicated that the defendant would be required to obtain an NPDES permit; however, there was nothing in the record to indicate that a permit would be issued in the near future. *Id.* at \*16.

■ I am not persuaded on the record before me that the doctrine of primary jurisdiction applies to this citizen suit. Plaintiffs' complaint asserts that defendant is discharging pollutants into navigable waters without an NPDES permit, in violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a). Section 301(a) imposes an absolute prohibition on the discharge of pollutants without a permit. *See Milwaukee v. Illinois,* 451 U.S. 304, 310–311, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981); *Natural Resources Defense Council, Inc. v. Costle,* 568 F.2d 1369, 1374 (D.C.Cir.1977)(citing H.Rep. No. 92–911, 92nd Cong., 2d Sess. 100 (1972)); *Beartooth Alliance v. Crown Butte Mines,* 904 F.Supp. 1168, 1174 (D.Mont.1995). Resolution of plaintiffs' claim does not require the court to set

effluent standards or to write a permit for the defendant, which are functions within the special competency of the CWQCD. The court is competent to determine whether the defendant has been "discharging" "pollutants" from a "point source" into "navigable waters" without a permit. *See U.S. v. Earth Sciences, Inc.,* 599 F.2d 368 (10th Cir.1979). Expert testimony will assist the court in resolving any complex technical issues presented. *See Friends of the Earth v. Carey,* 535 F.2d 165, 173 (2d Cir.1976)(discussing court's obligation to enforce compliance with Clean Air Act, even when the issues are "highly technical.")

Further, it is by no means certain that a remedial order entered by this court would interfere or conflict with the orders of the CWQCD or the EPA. In *Friends of Santa Fe* and *Montgomery Environmental Coalition Citizens Coord. Comm.,* the agency proceedings had progressed to the point where the agencies had issued final orders on pending permit applications. That is not the case here. The parties agree that the State of Colorado has been investigating Roosevelt Tunnel discharges for at least eight years, but has not issued any orders or permits to date. Defendant has not presented any evidence to show that the agencies will issue a final determination regarding the discharge of pollutants from the Roosevelt Tunnel into Cripple Creek in the near future. If the CWQCD does act on the Roosevelt Tunnel discharge permit application during the pendency of this action, the court will address that action at the appropriate time; however, if the CWQCD does not act, the court can reduce the potential for future conflict by inviting agency comments prior to entry of a remedial order.[5] *See Wilson*

---

5. The court declines to address El Paso's assertion that the pending Roosevelt Tunnel discharge permit application has mooted plaintiffs' request for injunctive relief. The jurisdictional argument has not been properly presented to the court or briefed by the parties.

v. *Amoco Corp.*, 989 F.Supp. 1159, 1170 (D.Wyo.1998)(CWA and RCRA action) (citing *O'Leary v. Moyer's Landfill, Inc.*, 523 F.Supp. 659 (M.D.Pa.1981)).

El Paso also argues that *Burford* abstention is appropriate. Under the *Burford* doctrine, a federal court sitting in equity must decline to interfere with the proceedings or orders of administrative agencies if timely and adequate state court review is available, and: (1) there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar;" or (2) "the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989)(quoting *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). *Burford* abstention should be applied only in extraordinary circumstances because of the federal court's unflagging obligation to exercise its jurisdiction. *Colorado River*, 424 U.S. at 817–18, 96 S.Ct. 1236.

Defendant argues that if this court renders its own determination about the permitting of mining tunnel discharges, it risks reaching a different conclusion from the CWQCD, which would create a conflict in statutory interpretation. Defendant contends that exercise of federal judicial review at this time would interfere with ongoing proceedings of the CWQCD and undermine the State of Colorado's attempt to establish a coherent policy for the regulation of mining tunnel discharges.

■ I find that abstention under the *Burford* doctrine is not appropriate. There is no evidence in the record about what action, if any, the CWQCD is taking

on the Roosevelt Tunnel, LLC permit application. Plaintiffs represented to the court at oral argument, unchallenged by the defendant, that the State has not provided notice of a draft permit for public comment. The court has no other information about agency action at this time. Further, it is undisputed that neither the EPA, nor the State, has issued any orders regarding Roosevelt Tunnel discharges. I cannot conclude, based on the meager record before me, that retaining jurisdiction over this citizen suit will interfere with the proceedings or orders of an administrative agency.

I therefore deny El Paso's Motion to Dismiss or to Stay in its entirety.

**B.** *Cross Motions for Summary Judgment on Jurisdictional Issues*

Plaintiffs seek partial summary judgment in their favor on their alleged compliance with the statutory jurisdictional prerequisites to initiating a citizen suit under the Clean Water Act. The prerequisites are: (1) that they serve the alleged violator and administrative agencies with a written notice of violation sixty days prior to initiating a civil action; and (2) that there is no pending federal or state prosecution of plaintiffs' claims. 33 U.S.C. § 1365(a) and (b)(1)(A) and (B). El Paso has filed a cross motion for partial summary judgment arguing that the content of plaintiffs' sixty-day notice letter is inadequate as a matter of law.

A citizen suit may not be brought to enforce the CWA "if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order ..." 33 U.S.C. § 1365(b)(1)(B). It is undisputed that neither the EPA, nor the State, has brought an enforcement proceeding against the de-

fendant in a federal or state court. Accordingly, plaintiffs are entitled to partial summary judgment on their claim of compliance with 33 U.S.C. § 1365(b)(1)(B).[6]

The CWA further provides that a citizen suit may not be commenced under the Act before sixty days after the plaintiff has given notice of the alleged violation of the standard, limitation, or order to the EPA, the state in which the alleged violation occurs, and the alleged violator. 33 U.S.C. § 1365(b)(1)(A). The regulations promulgated under the CWA require that the notice letter contain:

> sufficient information to permit the recipient to identify the specific standard, limitation or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3.

█ Compliance with 33 U.S.C. § 1365(b)(1)(A) and 40 CFR § 135.3 are jurisdictional prerequisites to maintenance of a citizen suit. *See Hallstrom v. Tillamook County*, 493 U.S. 20, 26, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989)(analyzing identical provision under the Resource Conservation and Recovery Act). The purpose of the notice requirement is twofold. First, an adequate notice gives the alleged violator "an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 60, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). Second, the notice allows government agencies an opportunity to enforce their laws and regulations, thereby obviating the need for a citizen suit. *Id.*

Plaintiffs mailed their sixty-day notice letter to defendant, EPA and the Colorado Department of Public Health and Environment, CWQCD on September 4, 2001 by certified mail.

El Paso contends that plaintiffs' notice letter is fatally flawed because plaintiffs fail to identify what pollutants are discharged, the point source, or how El Paso has "added" pollutants to the Roosevelt Tunnel discharge.

Plaintiffs maintain that they have sufficiently identified the activity alleged to constitute the CWA violation as "continuously discharging pollutants from your El Paso Gold Mine, El Paso shaft and related properties from a point source (Roosevelt Tunnel) into Cripple Creek without a valid CDPS Permit." (Plaintiff's Brief in Support of Motion for Partial Summary Judgment, Ex. C, p. 2) The notice letter further states that:

> [P]ortions of the Roosevelt Tunnel lie directly underneath the El Paso Gold Mine, or lie in underground zones that intercept groundwater flow emanating from the El Paso Gold Mine, or are connected to other underground workings that carry water originally emanating from the El Paso Gold Mine. As such, you are either the owner or operator of the Roosevelt Tunnel, or a generator of pollutants that flow into the Roosevelt Tunnel and discharge into Cripple Creek.

(*Id.*)

█ I find that plaintiffs' sixty-day notice letter meets the requirements of the CWA and its implementing regulations. Contrary to defendant's assertions, plaintiffs notified El Paso that the point sources of the discharge were the portal of the

---

**6.** A governmental administrative penalty action may also prevent a citizen suit from proceeding. 33 U.S.C. § 1319(g)(6)(A) and

(B). It is undisputed, however, that no such proceeding has been instituted in this case.

Roosevelt Tunnel, the El Paso shaft, and related underground mine workings, all of which are arguably "discernable, confined and discrete conveyances . . . from which pollutants are or may be discharged." *See* 33 U.S.C. § 1342(14). Plaintiffs also notified defendant that pollutants migrate from the El Paso shaft and underground mine workings owned or operated by defendant to the Roosevelt Tunnel where the pollutants are then discharged into navigable waters. Plaintiffs' failure to identify the specific pollutant discharged does not deprive the court of subject matter jurisdiction. *See Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc.*, 50 F.3d 1239, 1248 (3rd Cir.1995)(stating that the plaintiff is not required to "list every specific aspect or detail of every alleged violation.").

■ Further, upon receipt of plaintiffs' notice, El Paso formed a limited liability corporation which submitted an application for an NPDES permit for the Roosevelt Tunnel to the CWQCD. (Affidavit of David H. Schoger, attached as Ex. A to Plaintiffs' Brief in Support of Motion for Partial Summary Judgment, ¶¶ 11, 13) In the letter accompanying its application for a permit, Roosevelt Tunnel LLC's attorneys expressly reference the allegations contained in plaintiffs' sixty-day notice letter and indicate their understanding of those allegations by taking the position that El Paso's property is not the sole source of the Roosevelt Tunnel discharge. (Schoger Affidavit, Ex. B) Notice will be deemed adequate where the alleged violator takes specific remedial action in response, thereby demonstrating a sufficient understanding of the alleged violation. *See Atlantic States Legal Foundation v. Stroh Die Casting Co.*, 116 F.3d 814, 820 (7th Cir.1997); *Natural Resources Defense Council v. Southwest Marine*, 236 F.3d 985, 997 (9th Cir.2000).

I grant plaintiffs' motion for partial summary judgment, and deny defendant's motion for partial summary judgment, concerning the adequacy of plaintiffs' sixty-day notice letter.

C. *El Paso's Motion for Partial Summary Judgment: Liability for Pollutants Discharged from the El Paso Shaft*

El Paso maintains that it is entitled to summary judgment on plaintiffs' claim that El Paso is discharging pollutants from the El Paso mine shaft into navigable waters without a permit because it is not the owner or operator of the mine shaft. Defendant states that it sold the property which includes the mine shaft to a third party on July 9, 2001, two months before plaintiffs served their 60–day notice and four months before commencement of the instant action. (Warranty Deed, attached to Defendant's Cross Motion for Summary Judgment as Ex. 1) The El Paso shaft is an inactive, vertical mine shaft that collapsed in 1977. (Schoger Affidavit, ¶ 7)

Plaintiffs respond that the warranty deed does not prove that El Paso has conveyed the El Paso shaft to a third party because the deed does not specifically reference the El Paso shaft. Further, the warranty deed states that El Paso retains an easement over and through all property being sold; thus, El Paso has retained an ownership interest in any property that was conveyed by the deed. Finally, the cover letter which accompanied Roosevelt Tunnel, LLC's October 12, 2001 application for a discharge permit expressly states that defendant's property "includes a partially collapsed vertical mine shaft from the land surface to the Roosevelt Tunnel beneath its property." (Schoger Affidavit, Ex. B)

■ I find that genuine issues of material fact remain on the issue of defendant's ownership interest in the property re-

ferred to by the parties as the El Paso shaft. Accordingly, I deny defendant's motion for summary judgment.

### IV.

It is HEREBY **ORDERED** that:

(1) El Paso Gold Mines, Inc.'s Motion to Dismiss or to Stay [filed December 17, 2001] is **denied**.

(2) Plaintiffs' Motion for Partial Summary Judgment on the Issues of the Adequacy of Plaintiff's Notice Letter and Lack of Diligent Prosecution by the Government [filed February 8, 2002] is **granted**.

(3) El Paso Gold Mines, Inc.'s Cross–Motion for Summary Judgment [filed March 4, 2002] is **denied**.