**NEW YORK PUBLIC INTEREST RESEARCH GROUP, INC.; The Coalition to Save Hempstead Harbor, Inc.; Paul Thurman; Patty Conti; Elizabeth Weinstein; Patti Ringrose and Louise Tripoli, Plaintiffs,**

v.

**LIMCO MANUFACTURING CORPORATION, Defendant.**

**No. CV 87–2850.**

United States District Court,
E.D. New York.

Nov. 3, 1987.

Terris, Edgecombe, Hecker & Wayne, Washington, D.C. (Bruce J. Terris, James M. Hecker, of counsel); Randall M. Weiner, Russ Haven, Law Asst., New York City, for plaintiffs.

Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y. (Michael J. Tone, of counsel), for defendant.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

New York Public Interest Research Group, Inc. ("NYPIRG"), a not-for-profit corporation, The Coalition to Save Hempstead Harbor, Inc. ("Coalition"), a membership corporation, and Paul Thurman, Patti Conti, Elizabeth Weinstein, Patti Ringrose and Louise Tripoli, members of the Coalition, instituted this action against Limco Manufacturing Corporation ("Limco") claiming that Limco has, since April 27, 1984, violated regulations promulgated by the Administrator of the United States Environmental Protection Agency ("EPA") pursuant to Section 307(b) of the Federal Water Pollution Control Act ("the Act"), as amended, 33 U.S.C. § 1317(b).

Limco is engaged in the business of electroplating various metals onto a base material. In its electroplating operations it discharges more than 10,000 gallons of wastewater into a Publicly Owned Treatment Works ("POTW") which is owned and operated by the City of Glen Cove. The claim alleges that Limco failed to comply with the pretreatment standards established by the regulations in the Act. The complaint seeks an injunction, civil penalties, attorney's fees and costs.

Limco moves to dismiss the complaint, on the following grounds:

1. The instant action is barred by § 1365(b)(1) of the Act,[1] in that on or about August 7, 1987 the City of Glen Cove commenced an action in the New York State Supreme Court which seeks compliance with the standards established in the Act. On or about July 21, 1987 the City of Glen Cove commenced a criminal proceeding in the City Court of the City of Glen Cove charging "Violation of Sewer Use Ordinance—Pretreatment Permit Requirements." The instant action was started on August 13, 1987 with the filing of a complaint.

2. Limco as a "metal finisher" must comply with the standard set forth in 40 C.F.R. § 433 and not 40 C.F.R. § 413 as charged in paragraph 26 of the complaint.

3. Plaintiffs lack standing. The argument is based on the manner in which the waters are discharged, first into the POTW. Plaintiffs cannot show that the water Limco discharges enters Hempstead Harbor or Long Island Sound and therefore cannot show injury.

Alternatively, Limco moves to stay this action until final determination of the civil action and criminal proceeding in the state courts. Limco also moves to stay pre-trial discovery pending the outcome of its motion to dismiss.

*The Pendency of a Civil Action and Criminal Proceeding*

■ Limco does not challenge the allegation that plaintiffs gave notice of the alleged violation to the Administrator for New York State and to Limco as a prerequisite to instituting suit as required under § 1365(b)(1)(A). Limco's position is that the EPA approved the City's Industrial Pretreatment Program (Exhibit B appended to motion) and recognized the City's authority to enforce "national pretreatment standards for certain industries which discharge into [the City's] municipal sewerage system." (Exhibit C). Limco claims support for its position in that the New York State Department of Environmental Conservation stated that it "finds that primary enforcement responsibility rests with the City of Glen Cove.... Hence, in this matter, the City of Glen Cove should be taking appropriate enforcement action for alleged pretreatment violations within its sewage treatment system." (Exhibit O).[2] Limco argues that the institution of a civil action and criminal proceeding was an exercise of the City of Glen Cove's "authority, as delegated by the Federal and State governments...." (Memo p. 9).

We note that § 1362 defines the terms "State water pollution control agency," "State" and "municipality," when those terms are "used in this Act." As defined, "State" does not include "municipality." Congress designated the Administrator and the State to be the central enforcement arm under the Act. *See Hamker v. Diamond Shamrock Chemical Co.*, 756 F.2d 392, 395 (5th Cir.1985). "The private enforcement action, on the other hand, is supplementary to the scheme of the statute overall." *Sierra Club v. Shell Oil Co.*, 817 F.2d 1169, 1175 (5th Cir.1987). The Second Circuit Court of Appeals in *Friends of the Earth v. Consolidated Rail Corp.*, 768 F.2d 57, 63 (2d Cir.1985) defined the right of a private citizen to enforce the requirements of the Act and his or her subordination of that right to the Administrator and State. While recognizing the disruptive effect of unlimited public actions it also saw such citizens as "welcomed participants."

To permit a municipality or any state agency not specifically authorized to bring an action to enforce the Act's standards to substitute for the Administrator and the

---

1. Section 1365(b)(1) provides:

   No action may be commenced—
   (B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

2. Exhibit O is a letter dated August 27, 1987, after the instant action was commenced. The letter addressed to Limco's attorney is "in response to your inquiry whether or not the State of New York will take an enforcement action for alleged pretreatment violations contained in the Federal Water Pollution Control Citizen Suit Notice of May 28, 1987, sent by New York Public Interest Research Group, Inc."

State would seriously impair the role that Congress designed for citizens.

We hold that the actions commenced by the City do not bar the instant citizens' action.

*The Electroplating Category and Metal Finishing Category*

The parties agree that as of February 15, 1986 Limco was subject to the pretreatment standards set forth in 40 C.F.R. § 433 governing metal finishers. The standards became effective as of that date. Plaintiffs claim that as of March 16, 1981 Limco was also subject to pretreatment standards set forth in 40 C.F.R. § 413 because it conducts anodizing operations in which a protective coating is applied to various metals by electrolysis. *See* 40 C.F.R. §§ 413.-01(a) and 413.40 (1986). (Complaint at ¶ 16). The complaint further alleges that Limco "operates a non-integrated facility...." (Complaint at ¶ 18). 40 C.F.R. § 413.01 defines the pretreatment standard for non-integrated electroplaters.

Limco's motion to dismiss the parts of the complaint referred to above is denied. The disposition of the claim will be made after trial.

*Standing*

■ The complaint alleges that members of NYPIRG reside or own property in or near portions of Hempstead Harbor and Long Island Sound and that Limco's discharge into those waters "directly affects the health, economic, recreational, aesthetic and environmental interests and wellbeing of NYPIRG's members." (Complaint at ¶ 7). The complaint alleges that "[P]laintiffs Paul Thurman and Patty Conti each live within one mile of the Glen Cove Treatment Plant and Hempstead Harbor. Both are avid boaters and use Hempstead Harbor for this purpose." (Complaint at ¶ 8).

The authorization of citizens' suits under § 1365 is limited to "a person or persons having an interest which is or may be adversely affected." § 1365(g).

The Court in *Sierra Club v. Morton,* 405 U.S. 727, 734–35, 92 S. Ct. 1361, 1366, 31 L.Ed.2d 636 (1972) held:

Aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society, and the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process. But the "injury in fact" test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured.

*See also Friends of the Earth,* 768 F.2d at 60–61.

Some of the plaintiffs are property owners. The depreciation in property values resulting from the inability to use Hempstead Harbor and the Long Island Sound, because of the discharge, to the same extent as if the waters were clear, is "injury to a cognizable interest." Plaintiffs allege more. They claim damage to aesthetic, conservational and recreational values.

The further argument for lack of standing is that "Plaintiffs have not and cannot allege that Limco discharged into Hempstead Harbor or Long Island Sound, which are presumably the real areas of their interest." (Memo at p. 12). "Plaintiffs have not and cannot establish a connection between defendant's alleged violations and the pollution in Hempstead Harbor or Long Island Sound." (Reply Memo at p. 13–14).

The simple answer to the challenge is that the complaint (at ¶¶ 7 & 9) alleges that "Hempstead Harbor and the Long Island Sound ... are affected by defendant's discharge of pollutants" and that the discharge "affects the health, economic, recreational, aesthetic and environmental interests and wellbeing" of plaintiffs.

Assuming as we must the truth of the allegations of the complaint in a Rule 12(b) motion, Limco's challenge to standing is rejected.

*Request for a Stay*

■ We reject Limco's application to stay the instant action pending the outcome of the state court proceedings. Congress conferred jurisdiction on the U.S. district courts to enforce effluent standards and limitations established under the Act,

§ 1365(a). We have the obligation to exercise the jurisdiction conferred. *See Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 14, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983). We recognize that the prior institution of suit in the state court is a factor favoring abstention. But the issue should not be resolved by that factor alone—particularly in view of the fact that statutory notice given by plaintiffs to the Administrator, State and Limco predated the commencement of the state court proceedings. The plaintiffs' claim in the instant action goes back further in time and charges more violations than the state civil action or state criminal charge.

### ORDER

The motion of the defendant Limco Manufacturing Corp. to dismiss the complaint pursuant to Rule 12(b) or alternatively stay the action is in all respects denied.

The motion of the defendant Limco Manufacturing Corp. to stay discovery is in all respects denied.

SO ORDERED.