**OHIO PUBLIC INTEREST RESEARCH GROUP, et al., Plaintiff,**

v.

**LAIDLAW ENVIRONMENTAL SERVICES, INC., Defendant.**

No. C2–95–898.

United States District Court, S.D. Ohio, Eastern Division.

Sept. 3, 1996.

Stephen Phillip Samuels, Columbus, OH, Charles C. Caldart, Boston, MA, Andrew P. Buchsbaum, Ann Arbor, MI, for Plaintiff.

Larry Holliday James, Crabbe, Brown, Jones, Potts & Schmidt, Columbus, OH, for Defendant.

## OPINION AND ORDER

GRAHAM, District Judge.

This action was commenced on September 13, 1995 with the filing of a complaint by the Ohio Public Interest Research Group, the Ohio Environmental Council, and Cheryl Patzer against Laidlaw Environmental Services, Inc. ("Laidlaw"). The action is a "citizen suit" brought under § 505 of the Federal Water Pollution Control Act (the "Clean Water Act"), 33 U.S.C. § 1365. The complaint alleges violations of 33 U.S.C. §§ 1311(a) and 1317 premised on the alleged unlawful discharge of pollutants and violations of certain local pretreatment standards.

This matter is now before the Court on the filing of defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

### I.

As a threshold matter, Laidlaw asserts, albeit in a footnote, that this Court is without subject matter jurisdiction to hear this case because plaintiffs have failed to comply with the notice provision of the Clean Water Act.

The Clean Water Act regulates the discharge of pollutants into navigable waters. The Act prohibits all discharge of pollutants except inasmuch as one of several enumerated statutory exceptions applies. 33 U.S.C. § 1311(a). Any citizen may sue for alleged violations of an "effluent standard" or other limitation on the discharge of regulated pollutants under 33 U.S.C. § 1365(a)(1), but § 1365(b)(1)(A) provides that no action may be commenced "prior to sixty days after the plaintiff has given notice of the alleged violation ... to any alleged violator...." Further, "... service of notice shall be accomplished by certified mail ... or by personal service ..." 40 C.F.R. § 135.2(a)(1). Thus, under the plain language of the statute and its implementing regulation, a citizen may not sue the alleged violator until sixty days after that party has been given notice, either by certified mail or by personal service, of the alleged violation.

The United States Supreme Court has ruled that when the plain language of the statute demands it, compliance with such a notice provision is a mandatory condition precedent to filing suit. *Hallstrom v. Tillamook*, 493 U.S. 20, 26, 110 S.Ct. 304, 308–09, 107 L.Ed.2d 237 (1989). Observing that "[t]he equities do not weigh in favor of modifying statutory requirements when the procedural default is caused by [a plaintiff's] 'failure to take the minimal steps necessary' to preserve [a] claim," the Supreme Court found no reason to create an exception to the similar statutory notice provision in the Resource Conservation and Recovery Act. *Hallstrom* at 21, 110 S.Ct. at 306. (1989) (quoting *Johnson v. Railway Express Agency. Inc.*, 421 U.S. 454, 466, 95 S.Ct. 1716, 1723, 44 L.Ed.2d 295 (1975)); 42 U.S.C. § 6972(b).

This mandatory approach has long been followed in the Sixth Circuit with respect to

the notice provision in the Clean Water Act. The notice requirement of the Act is not a mere technical wrinkle of statutory drafting or formality that federal courts can ignore. *Greene v. Reilly,* 956 F.2d 593, 594 (6th Cir.1992); *Walls v. Waste Resource Corp.,* 761 F.2d 311, 316 (6th Cir.1985); *Ada–Cascade Watch Co. v. Cascade Resource Recovery,* 720 F.2d 897, 908 (6th Cir.1983).

Rule 12(b)(1) motions challenging subject matter jurisdiction are generally of two varieties. A *facial* attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. When reviewing a facial attack, the district court liberally takes the allegations in the complaint as true. *Murphy v. United States,* 45 F.3d 520 (1st Cir.1995); *Sanner v. Board of Trade of City of Chicago,* 62 F.3d 918 (7th Cir.1995); *see generally* C. Wright & A. Miller, *Federal Practice and Procedure* § 1350, at 218–220 (West 1990). By contrast, when a court reviews a complaint under a *factual* attack, no presumptive truthfulness applies to the factual allegations. *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990). A factual attack on subject matter jurisdiction commonly has been referred to as a "speaking motion." *See generally* C. Wright & A. Miller, *Federal Practice and Procedure* § 1364, at 468–69 (West 1990). Where a factual controversy exists, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist. The trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *Ohio Nat'l Life Ins. Co,* 922 F.2d at 325. *See also Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir.1977).

■ In the present case, defendant asserts that the plaintiffs' sixty-day notice letter dated July 12, 1995 was not served upon its statutory agent until July 25, 1995. Plaintiffs filed suit on September 13, 1995. Because "[a] civil action is commenced by filing a complaint with the court," Fed.R.Civ.P. 3,

this suggests a failure to comply with the sixty-day notice provision. However, since defendant has not provided this Court with any evidence supporting its assertion, the inquiry is bound to the facial sufficiency of jurisdictional allegation in the complaint. Plaintiffs allege compliance with § 1365(b)(1)(A). (Complaint at paragraph 4). If defendant wishes to contradict this allegation with evidence then it should do so promptly by motion to the Court. In the meantime, the case shall not be dismissed upon a mere allegation that plaintiffs have failed to comply with the sixty-day notice provision.

## II.

Laidlaw is a corporation that provides treatment of waste waters from industrial facilities and discharges effluent into the City of Columbus public sewer system, through publicly owned treatment works and into the Scioto River.

On October 21, 1992, Columbus unilaterally revised Laidlaw's permit to incorporate new discharge limits promulgated in Columbus City Code Chapter 1145. Laidlaw and Columbus entered into a Consent Order on December 22, 1992. Under its terms, Laidlaw was given approximately fourteen months to install new treatment measures to serve its existing pretreatment system. On July 23, 1995, Columbus issued a Compliance Order that set forth new terms and conditions relating Laidlaw's compliance with the pretreatment standards set forth under Chapter 1145.

In a letter dated July 12, 1995, plaintiffs notified Laidlaw, the Ohio Environmental Protection Agency, and the United States Environmental Protection Agency ("EPA") of alleged violations of Chapter 1145 and 33 U.S.C. §§ 1311(a) and 1317.

On September 8, 1995, five days before the present suit was filed, the cities of Columbus and Hilliard commenced an action against the defendant for failure to cure alleged violations of Chapter 1145. Defendant contends that this enforcement litigation precludes the initiation of a citizen suit under 33 U.S.C. § 1365(b)(1)(B), which provides:

[no action may be commenced] if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

Defendant argues that Columbus and Hilliard are included in the definition of "State" under this section, and that therefore this Court is precluded from exercising jurisdiction over plaintiffs, claims.[1]

"It is well settled that the starting point for interpreting a statute is the language of the statute itself." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 56, 108 S.Ct. 376, 381, 98 L.Ed.2d 306 (1987) (*quoting Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

The definitional section of the Clean Water Act provides as follows:

(3) The term "State" means a State, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, and the Trust Territory of the Pacific Islands.

(4) The term "municipality" means a city, town, borough, county, parish, district, association, or other public body created by or pursuant to State law and having jurisdiction over disposal of sewage, industrial wastes, or other wastes, or an Indian tribe or an authorized Indian tribal organization, or a designated and approved management agency under section 1288 of this title.

33 U.S.C. § 1362(3) and (4). Had congress chosen to merge these definitions, it could easily have done so. It did not. In *New York Public Interest Research Group v. Limco Mfg. Corp.,* 697 F.Supp. 608 (E.D.N.Y. 1987), the court took note of these sections and concluded that the term "State" as used in the Act does not include "municipality." *Limco* at 611. The district court held that a civil action and criminal proceeding commenced by a city did not bar a citizen suit under the Act. *Id.* A number of courts, including the Second Circuit Court of Appeals, have cited the holding in *Limco* with approval. *See Atlantic States Legal Foundation, Inc. v. Pan American Tanning Corp.,* 993 F.2d 1017, 1022 (2d Cir.1993); *Illinois Public Interest Research Group v. PMC, Inc.,* 835 F.Supp. 1070, 1074 (N.D.Ill.1993) ("... action by a local government body is not action by a 'state'"); *Public Interest Research Group of New Jersey v. Top Notch Metal Finishing Co.,* 26 Envtl. L. Rep. 2012, 2014, 1987 WL 44393 (D.N.J.1987).[2]

■ Defendant Laidlaw has directed this Court to no cases employing its definition of "State". Instead, it relies primarily on dictum in *Gwaltney, supra,* to suggest that enforcement actions by municipalities have the same preclusive effect on citizen suits as those initiated by the State or the Administrator. In *Gwaltney* the Supreme Court, in pointing out that Congress intended rigorous state enforcement activity, cites legislative history stating that citizens suits under the Act are only proper "if the Federal, State, and local agencies fail to exercise their enforcement responsibility." *Gwaltney* at 60, 108 S.Ct. at 383 (*quoting* S.Rep. No. 92–414, p. 64 (1971)). Plaintiffs persuasively argue, however, that this passage from *Gwaltney*

---

1. Although not cited by defendant, 33 U.S.C. § 1319(g)(6)(A)(ii) sets out a similar instance where citizen suits under the Clean Water Act are barred: "[such actions] with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection...." The provision is designed to preclude citizen suits which would be duplicative of an "administrative penalty action." *See Washington Public Interest Research Group v. Pendleton Woolen Mills,* 11 F.3d 883, 885 (9th Cir.1993).

2. It is interesting that the court in *Town of Bedford v. Raytheon Co.,* 755 F.Supp. 469 (D.Mass. 1991), held that the definition of "state" in CERCLA legislation did not include political subdivisions. 42 U.S.C. § 9601(27). The district court made reference to plaintiff's argument that Congress used the more restrictive term "means" (as opposed to "includes") in defining "State" in the Clean Water Act, 33 U.S.C. § 1362(3). *Bedford* at 471 n. 4. Nevertheless, the court held that even with CERCLA's more ambiguous terminology, "municipalities" were not "states" in that context. *Bedford* at 475.

merely refers to these provisions in the statute and uses them to illustrate a point about why the Act was not meant to allow citizen suits for wholly past violations. The Court did not apply these provisions in *Gwaltney* and gave no indication that it intended to expand their scope. The Supreme Court stressed that "the language of the statute itself" is where the analysis must begin. *Gwaltney* at 56, 108 S.Ct. at 380–81. In fact, the Supreme Court's analysis suggests no deviation from the plain language of the statute:

> ... [the] notice provision ... requires citizens to give 60 days notice of their intent to sue to the alleged violator as well as to the Administrator and the State. § 1365(b)(1)(A). If the Administrator or the State commences enforcement action within that 60 day period, the citizen suit is barred, presumably because governmental action has rendered it unnecessary. § 1365(b)(1)(B).

*Gwaltney* at 59–60, 108 S.Ct. at 382 (footnote omitted). The purpose of the notice provision is to give the EPA or the State a chance to initiate action that might preclude the need for a citizen suit. *Connecticut Fund for the Environment v. Job Plating Co., Inc.*, 623 F.Supp. 207 (D.C.Conn.1985). Thus, it is telling that Congress did not provide for sixty-day notice to local governments under § 1365(b)(1)(A).

Congress made the Administrator and the State the primary enforcers of the provisions of the Act. *See Hamker v. Diamond Shamrock Chemical Co.*, 756 F.2d 392, 395 (5th Cir.1985). "The private enforcement action, on the other hand, is supplementary to the scheme of the statute overall." *Sierra Club v. Shell Oil Co.*, 817 F.2d 1169, 1175 (5th Cir.1987). The Second Circuit Court of Appeals in *Friends of the Earth v. Consolidated Rail Corp.*, 768 F.2d 57, 63 (2d Cir.1985) defined the right of a private citizen to enforce the requirements of the Act and the subordination of that right to the Administrator and State. The court acknowledged the disruptive effect of unlimited public actions but it saw citizens as "welcomed participants" when enforcement actions by the State or the Administrator had not been commenced.

"To permit a municipality or any state agency not specifically authorized to bring an action to enforce the Act's standards to substitute for the Administrator and the State would seriously impair the role that Congress designed for citizens." *Limco* at 611.

The civil action by the cities of Columbus and Hilliard is not an enforcement action commenced by the State that precludes a citizen suit in this instance. Therefore, this Court is not deprived of subject matter jurisdiction over this citizen suit by virtue of 33 U.S.C. § 1365(b)(1)(B).

Defendant also contends that because of the effect of § 1365(b)(1)(B), plaintiffs have failed to state a claim upon which relief can be granted.

A motion to dismiss for failure to state a claim "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). All well-pleaded allegations must be taken as true and must be construed most favorably toward the nonmovant. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir.1983). The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir.1978); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). Rule 12(b)(6) must be read in conjunction with Fed.R.Civ.P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Wright & Miller, *Federal Practice and Procedure* § 1356 (1990). The mov-

ing party is entitled to relief only when the complaint fails to meet this liberal standard. *Id.*

Defendant Laidlaw has attached extrinsic evidence to its motion to dismiss. This Court will honor its request not to consider those exhibits with respect to the Rule 12(b)(6) grounds for dismissal, thereby avoiding the potential conversion of this motion to one for summary judgment.

■ Having held that § 1365(b)(1)(B) does not preclude federal jurisdiction in this case, plaintiffs need only allege violations of effluent standards or other limitations on the discharge of regulated pollutants in order to sustain their citizen suit. This they have done repeatedly in their complaint, alleging discharges in violation of the Act and the city's pretreatment standards. (Complaint at paragraphs 1, 4, 29 and 30). Regarding those allegations as true, the plaintiffs' claims can not be dismissed for failure to state a claim upon which relief can be granted.

### III.

Defendant next contends that this Court lacks subject matter jurisdiction over plaintiffs, claims because the violations they allege predate the commencement of this action.

In *Gwaltney,* the Supreme Court concludes that 33 U.S.C. § 1365(a) does not confer federal court jurisdiction over citizen suits involving wholly past violations. *Gwaltney* at 64, 108 S.Ct. at 385. However, in the same paragraph the Court states that 33 U.S.C. § 1365(a) confers jurisdiction over citizen suits when the plaintiffs make *good faith allegations* of "continuous or intermittent violation[s]". *Id.*

In rejecting petitioner's argument that plaintiffs must prove their allegations of ongoing noncompliance for federal jurisdiction to attach, the Supreme Court notes the specific language in § 1365(a)(1) that the defendant need only be "*alleged* to be in violation." *Id.* This holding reflects a sensitivity to the fact that proving on-going violations of environmental standards at the pleading stage, without the benefit of discovery, would often be an insurmountable obstacle to the initiation of a citizen suit.

Defendant cites *Atlantic States Legal Found. v. Eastman Kodak,* 933 F.2d 124 (2d Cir.1991) in which the court applied the *Gwaltney* criteria. The court indicated that citizen suits must be "prospective in nature." *Kodak* at 127. That case is unlike the present in that the alleged violator had entered a settlement agreement with state authorities designed to police compliance with environmental standards. *Id.* Even so, the court remanded that case to determine whether there was a realistic prospect of continued violations under the Act. *Kodak* at 128.

■ In any event, at the commencement of a case, the burden on the plaintiff is to allege rather than to prove. Therefore, the issue is whether plaintiffs have alleged in good faith that Laidlaw would continue to violate provisions of the Clean Water Act. The existence of subject matter jurisdiction is determined with respect to the circumstances at the time the suit is filed. *Gwaltney* at 64, 108 S.Ct. at 385; *see also Natural Resources Defense Council, Inc. v. Texaco Refining and Mktg.,* 2 F.3d 493, 502 (3d Cir.1993); *Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co.,* 989 F.2d 1305, 1311 (2d Cir.1993). The mere fact that good faith allegations of continuing violations in the complaint are premised in part on specific violations that occurred before the commencement of the suit does not render the allegations impotent for the purpose of supporting a finding of subject matter jurisdiction. Clearly it is not required that a citizen-plaintiff perceive and document a specific violation on the very day that its complaint is filed in order to secure federal jurisdiction over its suit.

As a general matter, Fed.R.Civ.P. 11 protects defendants from frivolous allegations. Rule 11 requires that proponents believe, upon reasonable inquiry, that evidence exists to support their factual assertions. As earlier mentioned, a factual attack on subject matter jurisdiction is commonly referred to as a "speaking motion." Both parties have attached exhibits relating to Laidlaw's compliance with environmental standards for this Court to consider.

The plaintiffs allege illegal discharge of various pollutants into city sewers. (Complaint at paragraph 4 (incorporating by reference Ex. 1)). The plaintiffs also allege that the discharge of arsenic, chromium, copper, lead, nickel, oil and grease is likely to continue to violate the law in the future because Laidlaw has not yet implemented adequate treatment measures. *Id.* At a number of other points the plaintiffs allege continuing violations of the Act and the city's pretreatment standards. (Complaint at paragraphs 29 and 30). These allegations are supported by provisions of the municipal court complaint filed by the cities of Columbus and Hilliard. (Defendant's Mem. Ex. A). Subsequently, the plaintiffs provide two Notifications of Continued Violation that the Columbus Department of Public Utilities has issued Laidlaw for violations of Chapter 1145 that occurred *after* the present suit was filed. (Pl. Supp. Mem. Ex. 1 and 2).

Thus, plaintiffs have not only made reasonable contentions that there was an evidentiary foundation underlying their factual assertions of continuing violations, but they have provided evidence that this is the case. Having provided this proof, there is little question that its allegations were in good faith.

Accordingly, this Court shall not dismiss the case for lack of subject matter jurisdiction.

Neither can it be said that plaintiffs have failed to state a claim upon which relief can be granted. Assuming all of the allegations outlined above are true, Laidlaw is clearly not entitled to judgment as a matter of law under 33 U.S.C. §§ 1311(a) and 1317.

### IV.

Based on the foregoing, defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted is DENIED.

It is so ORDERED.